# 25-2781

## United States Court of Appeals

### *for the*

### Second Circuit

American Future Fund, Inc.,

*Plaintiff-Appellant,*

– v. –

New York State Board of Elections, Kathleen C. Hochul, in her official capacity as Governor of the State of New York, Letitia James, in her official capacity as Attorney General of the State of New York, Michael L. Johnson, in his official capacity as Chief Enforcement Counsel for the New York State Board of Elections Division of Election Law Enforcement,

*Defendants-Appellees,*

New York City Campaign Finance Board,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
(Case No. 1:25-cv-08151)
(THE HONORABLE JENNIFER H. REARDEN, J.)

## OPENING BRIEF FOR PLAINTIFF-APPELLANT

JASON B. TORCHINSKY
KELLEN S. DWYER
ANDREAS N. EPISKOPOS
HOLTZMAN VOGEL BARAN
    TORCHINSKY & JOSEFIAK PLLC
2300 N Street, NW, Ste. 643
Washington, DC 20006
(202) 737-8808

SUSAN L. GREENE
JOSEPH T. BURNS
HOLTZMAN VOGEL BARAN TORCHINSKY &
    JOSEFIAK PLLC
5360 Genesee Street, Ste. 203
Buffalo, New York 14026
(716) 647-6103

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ........................................................................1

STATEMENT REGARDING ORAL ARGUMENT ......................................1

STATEMENT OF JURISDICTION..............................................................1

INTRODUCTION ........................................................................................2

STATEMENT OF THE ISSUES...................................................................4

STATEMENT OF THE CASE.......................................................................5

   A.    American Future Fund ....................................................................5

   B.    The Democratic Socialists of America ...........................................6

   C.    The Proposed Advertisements ........................................................8

   D.    New York's Regulatory Regime ..................................................10

   E.    This Lawsuit .................................................................................14

   F.    Oral Argument .............................................................................16

   G.    Post-Oral Argument Hearing .......................................................17

   H.    Partial Settlement.........................................................................17

   I.    District Court Decision .................................................................18

SUMMARY OF ARGUMENT ...................................................................19

STANDARD OF REVIEW ........................................................................20

ARGUMENT ..............................................................................................20

   I.    AFF IS LIKELY TO SUCCEED ON ITS AS-APPLIED
   CHALLENGES…………………………………………………………20

     A.    The Statute, as Interpreted by the Regulation, Is Unconstitutionally
     Vague. ...........................................................................................20

      1.    The Statute and Regulation Improperly Blur the Line Between
      Electioneering and Issue Advocacy. ...........................................21

      2.    The District Court Failed to Resolve the Ambiguity as to Whether the
      Statute Applies to the Proposed Advertisements. .........................28

     A.    The Statute and Regulation Cannot Constitutionally Be Applied to the
     Proposed Advertisements .............................................................33

      1.    Disclaimer and Disclosure Requirements Violate the First Amendment
      When Applied to Issue Ads that Do Not "Explicitly and Unambiguously"

i

Reference a Candidate. ...................................................................33

2.     Because the Proposed Advertisements Do Not Explicitly and
Unambiguously Identify a Candidate, the Statute is Unconstitutional As
Applied to Them. ...........................................................................39

3.     The District Court Erred By Failing To Consider Whether the Statute Is
Constitutional As Applied to the Proposed Ads ............................................45

II.     AFF IS SUFFERING ONGOING IRREPARABLE HARM. ..................51

III.     THE EQUITIES FAVOR A PRELIMINARY INJUNCTION .................53

IV.     THE CLAIMS ARE NOT MOOT ...........................................................55

CONCLUSION .....................................................................................58

# TABLE OF AUTHORIITIES

**Cases**        **Page(s)**

*4 Pillar Dynasty LLC v. N.Y. & Co.*,
933 F.3d 202 (2d Cir. 2019) ...............................................................38

*Aguilar v. Decker*,
482 F. Supp. 3d 139 (S.D.N.Y. 2020) ................................................54

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
880 F. Supp. 2d 456 (S.D.N.Y. 2012) ................................................52

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) ............................................................................35

*Anderson v. Credit One Bank, N.A. (In re Anderson)*,
884 F.3d 382 (2d Cir. 2018) ..........................................................44, 49

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) ............................................................................42

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) ............................................................................48

*Brokamp v. James*,
66 F.4th 374 (2d Cir. 2023) ................................................................21

*Bronx Household of Faith v. Bd. of Educ.*,
331 F.3d 342 (2d Cir. 2003) ...............................................................53

*Buckley v. Am. Const. Law Found.*,
525 U.S. 182 (1999) ............................................................................35

*Buckley v. Valeo*,
424 U.S. 1 (1976) .2, 12, 19, 21, 22, 23, 24, 25, 27, 32, 34, 35, 39, 40, 41, 42, 45, 54, 55

*Cal. Pro-Life Council, Inc. v. Getman*,
328 F.3d 1088 (9th Cir. 2003) ............................................................58

*Campaign Comm.*,
459 U.S. 87 (1982) ..............................................................................34

*Cerame v. Slack*,
123 F.4th 72 (2d Cir. 2024) ...................................................................48

*Citizens Union of N.Y. v. AG of N.Y.*,
408 F. Supp. 3d 478 (S.D.N.Y. 2019) ................................... 34, 36, 37, 38, 40, 42

*Citizens United v. FEC*,
558 U.S. 310 (2010) ................................................ 22, 34, 35, 37, 38, 39, 43, 44

*Citizens United v. Schneiderman*,
115 F. Supp. 3d 457 (S.D.N.Y. 2015) ...................................................52

*Commack Self-Serv. Kosher Meats, Inc. v. Hooker*,
680 F.3d 194 (2d Cir. 2012) ...............................................................21

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) ........................................................................50

*Elrod v. Burns*,
427 U.S. 347 (1976) ....................................................................51, 52

*Evergreen Ass'n v. City of New York*,
740 F.3d 233 (2d Cir. 2014) ............................................................52, 53

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ........................................................................21

*FEC v. Wis. Right to Life, Inc.*,
551 U.S. 449 (2007) (*WRTL*) ...........................................36, 43, 57, 58

*Foti v. City of Menlo Park*,
146 F.3d 629 (9th Cir. 1998) ...............................................................22

*Freedom Path, Inc. v. IRS*,
No. 20-cv-1349, 2025 U.S. Dist. LEXIS 193408 (D.D.C. Sep. 30, 2025) ....22, 23

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ........................................................................33

*Green Party v. N.Y. State Bd. of Elections*,
389 F.3d 411 (2d Cir. 2004) ...............................................................51

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ..........................................................................21

iv

*In re 1616 Second Ave. Rest.*,
  550 N.E.2d 910 (N.Y. 1990) ..............................................................32

*Indep. Inst. v. FEC*,
  216 F. Supp. 3d 176 (D.D.C. 2016) ....................................................39

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) ............................................................52

*Knox v. Service Employees*,
  567 U.S. 298 (2012) ....................................................................55, 56

*Libertarian Party of Conn. v. Lamont*,
  977 F.3d 173 (2d Cir. 2020) ..............................................................20

*McConnell v. FEC*,
  540 U.S. 93 (2003) ..........................................................................38

*McCutcheon v. FEC*,
  572 U.S. 185–04 (2014) ....................................................................54

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) ........................................................................44

*Melendez v. City of New York*,
  16 F.4th 992 (2d Cir. 2021) ..............................................................21

*Meyer v. Grant*,
  486 U.S. 414 (1988) ........................................................................33

*Murphy v. Hunt*,
  455 U.S. 478 (1982) (per curiam) ......................................................58

*N.Y. Progress & Prot. PAC v. Walsh*,
  733 F.3d 483 (2d Cir. 2013) ........................................................52, 54

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ........................................................................52

*NAACP v. Alabama*,
  357 U.S. 449 (1958) ........................................................................33

*NAACP v. Button*,
  371 U.S. 415 (1963) ........................................................................22

v

*Nat'l Org. for Marriage, Inc. v. Walsh*,
714 F.3d 682 (2d Cir. 2013) .......................................................15, 57, 58

*Nixon v. Shrink Mo. Gov't Pac*,
528 U.S. 377 (2000) .........................................................................44

*North Am. Soccer League, LLC v. U.S. Soccer Fed'n*,
883 F.3d 32 (2d Cir. 2018) .............................................................20

*Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*,
477 U.S. 619 (1986) ...................................................................50, 51

*Oneida Indian Nation of N.Y. v. Pifer*,
43 A.D.3d 579, 840 N.Y.S.2d 672 (3d Dep't 2007) .....................32, 51

*Picard v. Magliano*,
42 F.4th 89 (2d Cir. 2022) .............................................................46

*Porter v. Jones*,
319 F.3d 483 (9th Cir. 2003) .........................................................57

*Spencer v. Kemna*,
523 U.S. 1 (1998) ...........................................................................57

*Steffel v. Thompson*,
415 U. S. 452 (1974) ......................................................................47

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...................................................................47, 48

*Thomas v. Collins*,
323 U.S. 516 (1945) .......................................................................24

*United States v. Protex Indus., Inc.*,
874 F.2d 740 (10th Cir. 1989) ........................................................33

*Upsolve, Inc. v. James*,
155 F.4th 133 (2d Cir. 2025) ..........................................................48

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) .......................................................................43

*VIP of Berlin, LLC v. Town of Berlin*,
593 F.3d 179 (2d Cir. 2010) ...........................................................33

vi

*Virginia v. American Booksellers Ass'n*,
484 U.S. 383 (1988) ................................................................47

*Vt. Right to Life Comm., Inc. v. Sorrell*,
758 F.3d 118 (2d Cir. 2014) (*VRLC II*) ......................... 25, 34, 35, 37, 39, 45, 46

*Vt. Right to Life Comm. v. Sorrell*,
221 F.3d 376 (2d Cir. 2000) (*VRLC I*) ...... 2, 19, 24, 25, 32, 36, 42, 47, 48, 49, 50

*We The Patriots USA, Inc. v. Hochul*,
17 F.4th 266 (2d Cir. 2021) ...............................................54

*Wis. Right to Life, Inc. v. Barland*,
751 F.3d 804 (7th Cir. 2014) ...............................................22

**Statutes**

28 U.S.C. § 1292 ........................................................................2

28 U.S.C. § 1331 ........................................................................1

28 U.S.C. §§ 2201-02 ...............................................................2

28 U.S.C. §§ 2202 .....................................................................2

42 U.S.C. § 1983 ........................................................................1

N.Y. Elec. L. § 3-104(5)(b) ....................................................14

N.Y Elec. L. §14-100 ....................................................10, 13, 25

N.Y. Elec. L. § 14-106 ............................................................11

N.Y. Elec. L. § 14-107 ........................... 11, 12, 15, 17, 18, 28, 31, 50, 56

N.Y. Elec. L. § 16-114 ............................................................14

**Regulations**

11 C.F.R. § 100.17 .................................................................12

26 C.F.R. § 1.501 ....................................................6, 10, 20, 40

9 NYCRR § 6200.10 ..................... 14, 19, 26, 27, 29, 30, 31, 42

**Rules**

Federal Rule of Appellate Procedure 34 ...................................1

Federal Rule of Appellate Procedure 26.1 ................................................1

Federal Rule of Appellate Procedure 32 .................................................60

Second Circuit Rule 32.1 .......................................................................60

Second Circuit Rule 34.1 ..........................................................................1

**Websites**

*Buffalo DSA Endorses Adam Bojak for Assembly District 149*, https://buffalo-dsa.org/statements/buffalo-dsa-endorses-adam-bojak-for-assembly-district-149/ ..7

*Democratic Socialists of America Home Page*,

https://www.dsausa.org/ ..........................................................6, 8, 40, 41

*Democratic Socialists Think They're on a Winning Streak—Can They Build on Zohran Mamdani's Victory?*, The Guardian, (Aug. 17, 2025) https://www.theguardian.com/politics/2025/aug/17/democratic-socialists-election-zohran-mamdani...........................................................................................7

*Endorsements*, https://socialists.nyc/endorsements/ ...........................7, 40

*Get Involved*, https://electoral.dsausa.org/get-involved/ ........................8

*Healthcare*, https://medicareforall.dsausa.org/ .......................................8

*Housing*, https://housing.dsausa.org/ ......................................................8

IRS, *Social welfare organizations* (Apr. 17, 2025)**,** https://www.irs.gov/charities-non-profits/other-non-profits/social-welfare-organizations ....................................6

*Labor*, https://labor.dsausa.org/ .............................................................8

National Electoral Commission, *Past Endorsements*, https://electoral.dsausa.org/our-campaigns/past-endorsements/ ..............................6

*New DSA National Endorsement Criteria* (Oct. 27, 2025), https://electoral.dsausa.org/dsa-national-endorsement-criteria/ ...............................7

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant American Future Fund, Inc. states the following: Appellant is a non-profit entity that does not have a parent corporation, and no publicly held corporations own 10% or more of Appellant.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. An opportunity to hear both sides and allow the parties to respond to questions the Court may have would significantly aid the decisional process and further the cause of justice in this action. Fed. R. App. P. 34(a). In addition to this statement, Appellant will comply with the applicable local rule by filing an Oral Argument Statement Form within 14 days after the filing of Appellees' brief. Local R. 34.1(a).

## STATEMENT OF JURISDICTION

This is an appeal from an order entered on October 28, 2025, by the United States District Court for the Southern District of New York (Honorable Jennifer H. Rearden) denying Plaintiff-Appellant's motion for a preliminary injunction. A notice of appeal was timely filed on October 29, 2025. The district court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the First and Fourteenth Amendments, 42 U.S.C. § 1983, and the Declaratory Judgment Act,

28 U.S.C. §§ 2201-02. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) as this is an appeal from the denial of an injunction.

## INTRODUCTION

For nearly fifty years, the Supreme Court has limited disclaimer and disclosure requirements to speech that references "clearly identified candidates," which requires "an explicit and unambiguous reference" to a specific candidate, such as "the candidate's name," "photograph or drawing," "initials," "nickname," "office," or "status as a candidate (e.g., the Democratic Presidential nominee)." *Buckley v. Valeo*, 424 U.S. 1, 43 & n.51 (1976). And this Court has struck down laws that extended such requirements to communications that only "implicitly" reference a candidate because those laws could sweep in mere issue ads. *See Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 387-88 (2d Cir. 2000) (*VRLC I*).

New York—through interpretive regulations—is attempting to do exactly what this Court said it could not in *VRLC I*. While New York's statute limits disclosure and disclaimer requirements to speech that references a "clearly identified candidate," New York's regulations broadly interpret that phrase to extend to speech that *implicitly* references candidates by criticizing *policy positions*, *ideologies*, or *organizations* that the public may associate with candidates.

American Future Fund, Inc. ("AFF") is concerned about the dramatic rise of socialism in New York, the epicenter of American capitalism. Since the fall of 2025,

2

AFF has sought to run advertisements (the "Proposed Advertisements") to counter socialism's toxic ideas and call attention to the malign influence of the Democratic Socialist of America ("DSA"), a grassroots "social welfare organization." AFF has not been able to run its Proposed Advertisements, however, because New York's disclaimer and disclosure requirements cause AFF to reasonably fear doing so would trigger investigations, enforcement actions, and even civil and criminal liability. Instead, AFF filed this pre-enforcement action challenging New York's law as unconstitutionally vague and a violation of the First Amendment both facially and as applied, and sought a preliminary injunction barring Defendants from enforcing the law against AFF for running the Proposed Advertisements.

The district court denied the injunction. Yet, remarkably, the district court did not even address whether the disclaimer and disclosure requirements were constitutional as applied to the Proposed Advertisements. The court apparently thought it did not need to reach that question because, under its unique reading of the New York statute—one not even shared by Defendants—one of the relevant subsections does not apply within sixty days of an election.

This misreads the clear text of Subsection (a)(ii) of New York's disclaimer and disclosure law, which applies to any communications made "on or after January first of the year of the election" and makes no exception for speech close to an election. It further ignores that AFF also faces a substantial threat of liability under

3

Subsection (a)(iii), which indisputably applies "within sixty days before a general or special election."

But, regardless, even if AFF did have a strong statutory defense to a future enforcement action, that does not change the undisputed fact that AFF is being forced to self-censor due to the *substantial threat* of an enforcement action. Indeed, Defendants did not dispute that AFF was self-censoring, nor that AFF faced a substantial enforcement threat if it ran the Proposed Advertisements; to the contrary, Defendants passionately argued that the Proposed Advertisements would trigger a disclaimer and disclosure obligation. That undisputed, state-induced, self-censorship *is* the irreparable constitutional violation that AFF challenged. Yet the district court refused to decide whether that censorship is constitutional, i.e., whether New York's disclaimer and disclosure requirement is constitutional as applied to the Proposed Advertisements. This Court should vacate the denial of the preliminary injunction and instruct the district court to grant the preliminary injunction or, at a minimum, decide in the first instance whether AFF is likely to succeed in showing that New York's disclaimer and disclosure requirements are unconstitutional *as applied* to the Proposed Advertisements.

## STATEMENT OF THE ISSUES

1. Whether the district court erred by declining to decide whether New York's disclaimer and disclosure statute is likely unconstitutional as applied to AFF's

4

Proposed Advertisements, even though no party disputed that AFF had self-censored the advertisements due to a substantial enforcement risk.

2. Whether AFF is likely to succeed in demonstrating that New York's disclaimer and disclosure statute and implementing regulation are unconstitutional as applied to the Proposed Advertisements.

3. Whether AFF demonstrated irreparable harm based on unchallenged evidence that AFF had to self-censor political speech based on a substantial risk of enforcement.

4. Whether the balance of the equities and the public interest favor a preliminary injunction.

## STATEMENT OF THE CASE

### A. American Future Fund

Plaintiff-Appellant AFF is a 501(c)(4) Iowa non-profit organization. A–17-18 (¶25). AFF operates as a multi-state issue advocacy group dedicated to promoting conservative and free market views to the American public. *Id.* For almost twenty years, AFF has funded advertisements attacking socialist ideas and promoting free markets in various states. *Id.* AFF receives donations from Americans who share its mission and believe in its core principles. *Id.* AFF does not publicize the names of its donors, who largely prefer to remain anonymous, nor does it endorse or coordinate with candidates for public office. *Id.*

5

## B. The Democratic Socialists of America

AFF believes that the DSA embodies and drives the rising popularity of socialism in the United States. Founded in 1982, the DSA describes itself as a "socialist ... political[,] and activist organization, not a party." *Democratic Socialists of America Home Page*, https://www.dsausa.org/. The DSA is not registered as political party; rather, it operates as a nonprofit social welfare organization registered under Section 501(c)(4) of the Internal Revenue Code. *See* Pl.'s Reply in Support of Mot. for a Prelim. Injunction, Ex. B. This means that DSA cannot "direct[ly] or indirect[ly] participat[e] or interven[e] in political campaigns on behalf of or in opposition to any candidate for public office" and may only engage in political activities if those activities are not its "primary activity." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(ii); *see also* IRS, *Social welfare organizations* (Apr. 17, 2025), https://www.irs.gov/charities-non-profits/other-non-profits/social-welfare-organizations.

Although DSA's work cannot primarily promote or oppose political campaigns, DSA, like many civic organizations, endorses political candidates. Since 2017, "DSA has endorsed more than a hundred campaigns as a national organization at all levels of government." National Electoral Commission, *Past Endorsements*, https://electoral.dsausa.org/our-campaigns/past-endorsements/. DSA's local chapters also make endorsements. In the November 2025 elections in New York

City, for instance, the NYC chapter of DSA endorsed three candidates. New York City Democratic Socialists of America, *Endorsements*, https://socialists.nyc/endorsements/. In 2026, New York state will hold primary and general elections for a variety of public offices, including Governor, Comptroller, and Attorney General; the entire state legislature; various judgeships; and even some town and county offices. DSA has already endorsed candidates for these offices and is expected to endorse many more. *See, e.g.*, *Buffalo DSA Endorses Adam Bojak for Assembly District 149*, https://buffalo-dsa.org/statements/buffalo-dsa-endorses-adam-bojak-for-assembly-district-149/; *New DSA National Endorsement Criteria* (Oct. 27, 2025), https://electoral.dsausa.org/dsa-national-endorsement-criteria/ (announcing that the DSA's national convention passed a resolution "establishing new, concrete, specific, and immediately actionable criteria for DSA's national endorsements"); *Democratic Socialists Think They're on a Winning Streak—Can They Build on Zohran Mamdani's Victory?*, The Guardian, (Aug. 17, 2025) https://www.theguardian.com/politics/2025/aug/17/democratic-socialists-election-zohran-mamdani ("[L]ast weekend's annual democratic socialists of America national convention …, which welcomed tens of thousands of politically minded individuals from across the country, … was further recognition of the growing influence of the DSA.").

But the DSA's activities are far broader than endorsements. It uses "a variety

of tactics, from legislative to direct action, to fight for reforms." *Democratic Socialists of America Home Page*, https://www.dsausa.org/. Its work includes labor solidarity (https://labor.dsausa.org/), tenant organizing (https://housing.dsausa.org/), healthcare advocacy (https://medicareforall.dsausa.org/), coalition building, and political education. Its work is tied to socialism: popularizing, defending, and organizing around socialist ideas through education programs, campaigns, rallies, phonebanks (https://electoral.dsausa.org/get-involved/), working groups like the "Queer Socialists Working Group" (https://www.dsausa.org/get-involved/), and movement building (https://www.dsausa.org/get-involved/).

## C. The Proposed Advertisements

AFF developed the Proposed Advertisements to oppose socialist ideas and policies that were and are being pushed on New Yorkers by the DSA. A–22-23 (¶45). Specifically, AFF sought and seeks to run the following ads:

a. Expecting the trip to LaGuardia to be traffic-free is a bad bet. Expecting Socialism to improve NYC? That's a worse bet. Socialist plans to cut police funding won't keep you safe. Socialist assaults on private employers won't protect your job. And Socialist spending sprees won't make your taxes any less painful. Don't be fooled. Socialist promises sound sweet. But Socialist reality is enough to make you sick.

b. The Democratic Socialists of America, an extremist political organization, seeks to control the future of NYC. They want to defund and ultimately eliminate the police and prisons, decriminalize all drugs, no matter how dangerous, and radically change our economic system. The only way to stop them is to vote.

8

c. Here in New York, you don't have to be Sarah Palin to see New Jersey from your home. But some are suggesting the city should massively increase taxes to make the burden for New York small businesses 60% higher than in neighboring New Jersey. Employers and jobs are going to disappear and working-class New Yorkers are going to be hurt the most. The only way to stop these policies is to vote.

d. There's so much at stake this year. Extremists are trying to push candidates for office to embrace policies that would spell the end of New York. Higher taxes will make New York less affordable, defunding the police will make it dangerous, and embracing extremism will make people want to leave. Stand up to extremism – vote at your earliest opportunity, in-person beginning on October 25.

e. They call themselves the DSA — but behind the name is an agenda that would remake our city. Defunding the police. Legalizing sex work. Reshaping our economy with reckless policies. This isn't the future New Yorkers want. The only way to stop extremists is to vote.

f. Socialism is creeping into New York City. They promise fairness, but what they deliver is higher taxes, fewer choices, and a weaker economy. If we don't act, this becomes our reality. The future of our city is at stake — stop socialism. Go vote.

g. They pretend it would be progress. But what socialism really means is higher taxes — on families, on small businesses, on the people who make New York run. The DSA's plan would drain paychecks, crush jobs, and drive even more families out of the city. New Yorkers already pay more than enough. We can't afford their so-called revolution. Protect your paycheck. Protect your future. Stand up for New York — vote.

h. They say it's empowerment. But the truth is darker. The DSA wants to legalize prostitution — opening the door to human trafficking, exploitation, and crime in our neighborhoods. Is this the future we want for our daughters, our streets, our city? New York should protect the vulnerable, not put them at greater risk. Don't let this

9

reckless idea become law.  Stand up for New York.  Vote.

i.   The DSA isn't just another group.  They're pushing an extremist vision: higher taxes, defunded police, legalized prostitution, reckless policies that put ideology before people.  New Yorkers didn't ask for this — and we don't have to accept it.  The future of our city is on the line.  Stop the extremists.  Protect New York.  Vote.

j.   They call it reform.  But it means fewer police, weaker enforcement, and more criminals back on the streets.  Families are left to wonder if the subway is safe, if their kids can walk home at night.  This isn't progress — it's chaos.  New Yorkers deserve better.  Protect our neighborhoods.  Stop the radical agenda.  Vote.

k.   Their agenda is extreme: higher taxes, defunded police, legalized prostitution, reckless economic policies.  They call it progress.  We call it dangerous.  New Yorkers didn't ask for this — and we don't have to accept it.  The future of our city is on the line.  Stop the extremists.  Protect New York.  Vote.

AFF did not and does not wish to support or oppose any particular candidate in any election and, accordingly, the ads do not reference any candidate. A–11 (¶¶5-6).  Rather, the Proposed Advertisements attack socialist ideology and policies, and the DSA, a prominent promoter of such policies. *Id.*

## D. New York's Regulatory Regime

AFF has been and continues to be unable to run its Proposed Advertisements, however, because it reasonably believes Defendants will deem the Proposed Advertisements "independent expenditures" under New York law. *Id.* at 26 (¶60).  That determination is important because if an entity makes "Independent Expenditures" under N.Y. Elec. L. § 14-100(12), it must register with Defendant

10

New York State Board of Elections ("SBOE") as an "Independent Expenditure committee" pursuant to § 14-107(3).

As part of that registration process, among other intrusive requirements, an "Independent Expenditure committee" must file periodic reports with the SBOE disclosing the names, addresses, occupation, and employers of those who contribute $1000 or more to the Independent Expenditure Committee. A–21 (¶37); N.Y. Elec. L. § 14-107(4)(a)-(b). In addition, within thirty days of an election, Independent Expenditure committees must make disclosures to the SBOE within 24-hours of:

- The receipt of a contribution of $1,000 or more; and
- Any expenditures, including paid Internet or digital advertisements, of over $5,000.

The SBOE makes publicly available the names, addresses, and employers of every person who donates $1000 or more to an Independent Expenditure committee. *Id.* § 14-107(4). Independent Expenditure committees are also required to disclose in their advertisements their identity as the entity paying for and disseminating the advertisement. *Id.* § 14-106(2).

A communication is an "independent expenditure," and thus subject to the requirements above, if it is conveyed to over 500 members of the general public and meets *one* of the following timing and content criteria:

> i.     irrespective of when such communication is made, contains words such as "vote," "oppose," "support," "elect," "defeat," or "reject," which call for the election or defeat of the clearly identified candidate,

11

     ii.     refers to and advocates for or against a clearly identified candidate or ballot proposal on or after January first of the year of the election in which such candidate is seeking office or such proposal shall appear on the ballot, or

     iii.    within sixty days before a general or special election for the office sought by the candidate or thirty days before a primary election, includes or references a clearly identified candidate.

N.Y. Elec. L. § 14-107(a) (hereinafter "Statute").

The term "clearly identified candidate" is not unique to New York; it has long been used in federal campaign finance law and has been incorporated into the campaign finance laws of dozens of states. The Supreme Court has long interpreted "clearly identified candidate" to:

> require that the candidate's name, photograph or drawing, or other unambiguous reference to his identity appear as part of the communication. Such other unambiguous reference would include use of the candidate's initials (e. g., FDR), the candidate's nickname (e. g., Ike), his office (e. g., the President or the Governor of Iowa), or his status as a candidate (e. g., the Democratic Presidential nominee, the senatorial candidate of the Republican Party of Georgia).

*Buckley*, 424 U.S. at 43 n. 51.[1]

---

[1] The *Buckley* definition has been since been codified in federal statute, *see* 2 U.S.C. § 431(18), and Federal Election Commission regulations. Specifically, FEC regulations provide that:

> The term *clearly identified* means the candidate's name, nickname, photograph, or drawing appears, or the identity of the candidate is otherwise apparent through an unambiguous reference such as "the President," "your Congressman," or "the incumbent," or through an unambiguous reference to his or her status as a candidate such as "the Democratic presidential nominee" or "the Republican candidate for Senate in the State of Georgia."

12

Like the *Buckley* definition, New York law specifies that "'clearly identified candidate' means that: (a) the name of the candidate involved appears; (b) a photograph or drawing of the candidate appears; or (c) the identity of the candidate is apparent by unambiguous reference." N.Y Elec. Law §14-100(12). Unlike the *Buckley* definition, however, New York law does not make clear that the phrase "unambiguous reference" requires that a candidate be expressly identified by initials, nickname, title, office, or status as a candidate.

The SBOE has compounded this ambiguity by promulgating a regulation broadly construing the Statute. In particular, the SBOE has instructed that, "[f]or purposes of determining that a communication is advocating for or against a candidate or ballot proposal," under N.Y. Elec. L. 14-107(a)(ii), "the following factors shall be considered, but shall not be limited to:

  (i)   whether it identifies a particular candidate by name or other means such as party affiliation or distinctive features of a candidate's platform or biography or identifies a ballot proposal;

  (ii)  whether it expresses approval or disapproval for said candidate's positions or actions or for a ballot proposal;

  (iii) whether it refers to a candidate or ballot proposal and is part of an ongoing series by the group on the same issue and the expenditure is made on or after January 1st of the year of the election in which such candidate is seeking office or such proposal shall appear on the ballot;

---

11 C.F.R. § 100.17 (emphasis in original).

13

(iv) whether the issue raised in the communication has been raised as a distinguishing characteristic amongst the referenced candidates; and

(v) whether its timing and the identification of the candidate are related to a vote on legislation or a position on legislation by an officeholder who is also a candidate and is made on or after January first of the year of the election in which such candidate is seeking office."

9 N.Y. Comp. Codes R. & Regs. § 6200.10(b)(1)(ii)(c)(2) (hereinafter, the "Regulation" to refer to "NYCRR 6200.10" as a whole, and the "(ii)(c)(2) Factors" to refer to this list of factors). The Regulation further provides that, "even if some of the above factors" are or are not present "the communication must still be considered in its context before arriving at any conclusion." *Id.* § 6200.10(b)(1)(ii)(c)(4).

### E. This Lawsuit

Because of New York's broad and vague Regulation, and its apparent desire to extend the Statute to cover issue advocacy, AFF would face substantial legal risk were it to run its Proposed Advertisements without first complying with New York's intrusive and burdensome disclaimer and disclosure requirements. *Id.* at 26-27 (¶ 60, 68). This includes a real, substantial, and imminent risk that Defendants would subject AFF to investigations, enforcement actions, or even criminal prosecution if AFF runs the Proposed Advertisements. *Id.* at 15-16 (¶ 19); N.Y. Elec. L. § 3-104(5)(b). AFF could also be compelled to disclose for public view sensitive information, including the identities of its donors. A–26 (¶ 60); N.Y. Elec. L. § 16-114 (authorizing court to compel the filing of statement of contributions for

14

violations §14-107). As a result, AFF has been and will continue to be chilled from its concrete plans of engaging in protected speech, i.e., running its Proposed Advertisements. A–10, 17, 31 (¶¶ 2, 24, 78-79). Accordingly, AFF brought this pre-enforcement challenge and sought a preliminary injunction.

In opposing the preliminary injunction, Defendants did not dispute that AFF faced a substantial threat of enforcement for running the Proposed Advertisements or otherwise contest AFF's standing. To the contrary, Defendants argued that AFF's ads do constitute "independent expenditures" under New York law and thus require AFF "to comply with New York's IEC disclosure provisions." *See* Defs.' Opp'n Br., at 20. In particular, Defendants argued because "[f]ive of the ads explicitly refer to the Democratic Socialists of America ("DSA"), and "Mamdani is the only candidate for citywide office in the 2025 election endorsed on the New York City DSA's website," the ads reference a "clearly identified candidate" and trigger the Statute. *Id.* at 21.[2]

---

[2] After Defendants expressed concern that AFF had not provided audio or visual material to accompany the Proposed Advertisements, AFF stipulated that (1) no image of any candidate or any candidate's campaign logo will appear in any visual in any advertisement, (2) no audio clip of any candidate will be included in any audio recording, and (3) the scripts will be read by a paid actor or actress whose voice does not resemble that of any candidate, with only incidental music accompanying the audio. *See* Pl.'s Reply Br. at 2 n.2; ECF No. 26-1. This is sufficient information upon which to grant a pre-enforcement challenge to a speech regulation. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688-92 (2d Cir. 2013).

### F. Oral Argument

At oral argument, the Defendants maintained that all of Proposed Advertisements come within the "ambit of the statute," because "[t]hey can only be reasonably viewed in the lead-up to th[e] mayoral election as advocating for voters to vote against [a] candidate," A–52, 53, referring to the language of subsection (a)(ii) of the Statute. Indeed, in response to the district court's questions about several individual ads, counsel asserted that each communication would "be deemed an independent expenditure" because they "advocat[e] against a given candidate." *Id.* at 62.[3] Even though Defendants admitted that no candidate had "said he's running as a Democratic Socialist," they maintained that all ads that mention the DSA reference a clearly identified candidate. *Id.* at 61. To arrive at that conclusion, Defendants made clear that they were applying the Regulation's (ii)(C)(2) factors, including whether the communication includes "distinguishing characteristics" of a candidate's campaign. *Id.* at 56, 62, 64. At one point, for instance, Defendants assured the court that Proposed Ad #4 could only be referring to Zohran Mamdani because it referenced "higher taxes," which is one of his distinguishing "positions." *Id.* at 61. At another point, Defendants argued the Statute covers the Proposed

---

[3] Notably, the continued use of the word "advocate" refers to subsection (a)(ii) of the Statute.

Advertisements because a "reasonable voter" would view them as advocating against then-candidate Mamdani. *Id.* at 53.

### G. Post-Oral Argument Hearing

The district court held a second telephonic hearing to ask counsel whether N.Y. Elec. L. § 14-107(a)(ii)—which contains the "advocates for or against" language—applies even when within sixty days of an election. A–75. AFF maintained that, within sixty days of an election, entities must comply with both § 14-107(a)(ii) (which applies to communications made "on or after January first of the year of the election") and § 14-107(a) (iii) (which applies to communications made "within sixty days before a general or special election"). *Id.* at 75-76. In response, the Defendants indicated that they "agree" with AFF's interpretation. *Id.* at 76. This mirrors the position Defendants took in their brief, which argued that Proposed Advertisements trigger Subsection (a)(ii) of the Statute because they "would be interpreted by their prospective audience as 'advocat[ing] … against a clearly identified candidate.'" Defs.' Opp'n Br., at 20 (quoting N.Y. Elec. L. § 14-107(1)(a)(ii)).

### H. Partial Settlement

Following the second hearing and the district court's questioning of the constitutionality of the Statute as applied to Proposed Advertisements that do not reference the DSA (Am. Compl. ¶ 45 (a), (c), (d), (f), (j), and (k) (hereinafter "the

17

non-DSA ads"), the parties entered into a consent decree in which Defendants agreed not to initiate an enforcement action against AFF for running those ads. But Defendants did not agree not to file an enforcement action against AFF for running the advertisements that reference the DSA. *See* Am. Compl. ¶ 45(b), (e), (g), (h), (i) ("the DSA Advertisements").

## I. District Court Decision

On October 28, 2025, the district court denied AFF's motion. *Id.* at 100-05. Notably, the district court did not consider whether the Statute violated the First Amendment as applied to the DSA Advertisements. Instead, it concluded that the Regulation—which interprets the "advocates for or against" language in the definition of "independent expenditure," N.Y. Elec. L. § 14-107(1)(a)(ii)—has no force within sixty days of an election. A–100. The Court then analyzed the text of the Statute and concluded that—facially—it complied with the First Amendment because its definition of "clearly identified candidate" was similar to statutes this Court has previously upheld. A—102-04 & n.14.

This appeal followed. AFF sought expedited review because it wishes to run its Proposed Advertisements in time for next year's primary elections in the spring, when issues about which AFF cares deeply will be actively discussed. Yet AFF is unable to run its ads while under threat of enforcement of New York's disclosure

18

regime. Agreeing that there was good cause for expedited consideration, this Court granted AFF's request.

## SUMMARY OF ARGUMENT

Speech regulations targeting electioneering are unconstitutionally vague if they fail to draw bright lines to avoid the chilling of issue advocacy. In particular, such regulations must be limited to speech that "explicitly and unambiguously" references a candidate. *Buckley*, 424 U.S. at 43. They cannot vaguely cover speech that "implicitly" references candidates via references to issues or political organizations that the public may associate with candidates. *VRLC I*, 221 F.3d at 387-88.

But that is exactly what the Regulation does, covering speech that "identifies a particular candidate by" referencing "distinctive features of a candidate's platform or biography," or an "issue" that "has been raised as a distinguishing characteristic" of a candidate. 9 NYCRR § 6200.10(b)(1)(ii)(c)(2)(i), (iv). Defendants assert that, under this Regulation, it is enough that the DSA Advertisements reference an organization that has endorsed a candidate. Whether Defendants' interpretation is correct is entirely unclear, and the district court declined to resolve this ambiguity, thereby forcing AFF to continue to self-censor protected speech.

In addition, disclaimer and disclosure requirements must face "exacting scrutiny" under the First Amendment, which is only satisfied when the requirement

19

is limited to speech that "explicitly and unambiguously" references a candidate. *Buckley*, 424 U.S. at 43. But Defendants went further and covered the Proposed Advertisements merely because they reference the DSA—a 501(c)(4) organization that cannot, even "indirectly," participate in campaigns or make politics its "primary activity." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(ii). This unprecedented assertion of state power is causing AFF ongoing, constitutional harm because it must continue to self-censor. The district court's counter-textual interpretation of the Statute is not binding on Defendants and therefore does nothing to stop the ongoing chilling of AFF's constitutionally protected speech. Only a preliminary injunction can right this constitutional wrong.

## STANDARD OF REVIEW

This Court reviews the district court's denial of a preliminary injunction for abuse of discretion and reviews de novo its legal rulings. *North Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 36 (2d Cir. 2018). "A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law." *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 176 (2d Cir. 2020).

## ARGUMENT

## I.     AFF IS LIKELY TO SUCCEED ON ITS AS-APPLIED CHALLENGES

### The Statute, as Interpreted by the Regulation, Is Unconstitutionally Vague.

20

**1. The Statute and Regulation Improperly Blur the Line Between Electioneering and Issue Advocacy.**

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Vague laws offend the Due Process Clause in "two connected but discrete" ways: first, by depriving "regulated parties [of the ability to] know what is required of them so they may act accordingly;" second, by failing to accord the "precision and guidance [ ] necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.* A law is unconstitutionally vague if it (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited," or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010) (internal quotations omitted).

For laws "capable of reaching expression sheltered by the First Amendment," courts apply a strict void-for-vagueness standard to prevent chilling the very discourse that the First Amendment is designed to protect. *Melendez v. City of New York*, 16 F.4th 992, 1015 (2d Cir. 2021) (quoting *Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 213 (2d Cir. 2012)); *see Buckley*, 424 U.S. at 40-41 ("Close examination of the specificity of the statutory limitation is required where, as here, the legislation imposes criminal penalties in an area permeated by First Amendment interests."); *Brokamp v. James*, 66 F.4th 374, 403 (2d Cir. 2023)

(vagueness review "heightened" for laws that "pertain[] to speech protected by the First Amendment"). To safeguard this liberty, "[p]recision ... must be the touchstone in an area so closely touching our most precious freedoms." *Buckley*, 424 U.S. at 41 (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)). And importantly, "First Amendment standards must eschew the open-ended rough-and-tumble of factors, which invites complex argument in a trial court and a virtually inevitable appeal." *Citizens United v. FEC*, 558 U.S. 310, 336 (2010) (cleaned up).

Accordingly, courts routinely invalidate speech regulations that are not sufficiently definite to prevent discriminatory enforcement and the chilling of protected speech. *See, e.g.*, *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 833 (7th Cir. 2014) (concluding that statute covering acts "for 'political purposes' include *but are not limited to* … communication[s] which expressly advocates the election … of a clearly identified candidate" was unconstitutionally vague); *Citizens United*, 558 U.S. at 335-36 (invalidating campaign finance restriction in part because the FEC's "two-part, 11-factor balancing test" for determining whether advertisements were the "functional equivalent" of express advocacy was overly vague); *Foti v. City of Menlo Park*, 146 F.3d 629, 639 (9th Cir. 1998) ("With this range of factors to consider, there is the danger that a police officer might resort to enforcing the ordinance only against cars with signs whose messages the officer or the public dislikes."); *Freedom Path, Inc. v. IRS*, No. 20-cv-1349, 2025 U.S. Dist.

LEXIS 193408, at *67 (D.D.C. Sep. 30, 2025) (concluding Treasury regulation and IRS revenue ruling used to deny application for tax-exempt status was unconstitutionally vague in part because it used a non-exhaustive "list of 11 factors" to determine whether a communication "qualifies as political campaign activity").

Courts have been particularly exacting where, as here, a regulation draws a line between speech concerning candidates (i.e., "electioneering") and speech concerning political issues (i.e., "issue advocacy"). *Buckley*, for instance, held that even narrowing a regulation to cover only communications "advocating the election or defeat of … a clearly identified candidate" did not "eliminate[] the problem of unconstitutional vagueness altogether" because "the distinction between discussion of issues and candidates and advocacy of election or defeat of candidates may often dissolve in practical application." 424 U.S. at 42. This distinction is slippery, the Court explained, because (1) "[c]andidates … are intimately tied to public issues involving legislative proposals and governmental actions," (2) "candidates campaign on the basis of their positions on various public issues"; and (3) "campaigns themselves generate issues of public interest." *Id.* at 42-43. Therefore, in the absence of a brightline rule separating electioneering and issue advocacy, "'[n]o speaker ... safely could assume that anything he might say upon the general subject would not be understood by some as an invitation'" to support a particular candidate, and such uncertainty would inevitably "'compel[] the speaker to hedge

23

and trim'" discussion of public issues. *Id.* at 43 (quoting *Thomas v. Collins,* 323 U.S. 516, 535 (1945)).

To avoid these vagueness problems and the self-censorship that would result, *Buckley* limited the statute's advocacy requirements to "explicit words of advocacy" and construed the term "clearly identified candidate" to "require an explicit and unambiguous reference to the candidate" such as "the candidate's name," "photograph or drawing," "initials," "nickname," "office," or "status as a candidate (e.g., the Democratic Presidential nominee, the senatorial candidate of the Republican Party of Georgia)." *Buckley*, 424 U.S. at 43 & n.51. The upshot of *Buckley* was clear: absent a limiting construction requiring explicit and unambiguous references to a candidate, "clearly identified candidate" is unconstitutionally vague.

Faithfully applying *Buckley*, this Court struck down as "impermissibly vague" a Vermont statute requiring disclaimer and disclosure for advertisements that "expressly *or implicitly* advocate[] the success or defat of a candidate." *VRLC I*, 221 F.3d at 387 (emphasis added). As this Court explained, "[t]he word 'implicitly' 'fails to clearly mark the boundary between' what is 'permissible and impermissible'" because "a person seeking to communicate his or her point of view on a public issue—to engage in classic issue advocacy—cannot know in advance whether the State will read the communication to be an implicit endorsement of a

candidate who, to a greater or lesser extent, agrees with or supports action that conform to the speaker's view." *Id.* 387-88 (quoting *Buckley*, 424 U.S. at 41).[4]

The Statute and the Regulation fail the vagueness standard set by *Buckley* and *VRLC I.* As an initial matter, unlike the *Buckley* definition, the Statute does not limit the phrase "clearly identified candidate" to an "*explicit* ... reference to the candidate," *Buckley*, 424 U.S. at 43 (emphasis added), or specify that the reference must uniquely identify that candidate by initials, nickname, title, office, or status as a candidate, *id.* at 43 n.51. Rather, the Statute merely requires that the "the identity of the candidate [be] apparent by unambiguous reference." N.Y. Elec. L. §14-100(12). According to Defendants, this means the Statute covers speech "even if" its alleged "references to particular candidates" are "not express." Defs.' Opp'n Br., at 19.

The Regulation exacerbates the Statute's vagueness by instructing that, "[f]or purposes of determining that a communication is advocating for or against a candidate," under subsection (a)(ii) of the Statute, a regulator shall "consider,"

---

[4] While this Court, in dicta, did question "whether *VRLC I*'s holding that 'pure issue advocacy' cannot be the subject of a valid governmental regulation" under the First Amendment "remains viable," it did not cast doubt on *VRLC I*'s vagueness holding. *Vt. Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 131 n.11(2d Cir. 2014) (*VRLC II*). Indeed, *VRLC II* reviewed the constitutionality of a disclosure law that was limited to communications that "refer[] to a clearly identified candidate," *id.* at 122, meaning that it had no occasion to address *VRLC I*'s holding that disclosure laws that turn on whether a communication "implicitly" references a candidate are unconstitutionally vague.

several factors, including whether the communication "identifies a particular candidate by … distinctive features of a candidate's platform or biography," 9 NYCRR § 6200.10(b)(1)(ii)(c)(2)(i), and "whether the issue raised in the communication has been raised as a distinguishing characteristic amongst the referenced candidates," *id.* § 6200.10(b)(1)(ii)(c)(2)(iv). These factors suggest that issue ads could be deemed implicit references to a candidate, and thus covered by the Statute, if the issue discussed is sufficiently a "distinctive feature[] of a candidate's platform," *id.* § 6200.10(b)(1)(ii)(c)(2)(i), or a "distinguishing characteristic" of a candidate, *id.* § 6200.10(b)(1)(ii)(c)(2)(iv).

The Regulation's use of the passive voice compounds the confusion. Subsection (c)(2)(i)(v) is not limited to issues the candidates themselves make "a distinguishing characteristic" of their campaign. *Id.* § 6200.10(b)(1)(ii)(c)(2)(iv). Rather, (c)(2)(iv) counsels in favor of applying the Statute whenever "the issue raised in the communication *has been raised* as a distinguishing characteristic amongst the referenced candidates," *id.* § 6200.10(b)(1)(ii)(c)(2)(iv) (emphasis added). This means the Statute could cover a communication that attacks a position that third parties have accused a candidate of holding, even if the candidate himself has disavowed it.[5]

---

[5] At oral argument, Defendants confirmed that all policy issues associated with a candidate, even ones that a candidate has "distanced himself from," are used to determine whether an ad references a candidate. A–58. For instance, Defendants

Subsection (c)(2)(i) adds to the vagueness by suggesting that issue ads could become "independent expenditures" if they implicitly "identif[y] a particular candidate by" referencing "distinctive features of a candidate's … biography." *Id.* § 6200.10(b)(1)(ii)(c)(2)(i). Indeed, candidates often draw criticism for real or alleged associations with controversial persons, organizations, and institutions. Think President Trump's association with Elon Musk, or his alleged association with the Proud Boys. Subsection (c)(2)(i) thus raises the specter that an advertisement criticizing a person who is not a candidate, or an organization that is not a political party, could nonetheless be considered an "independent expenditure" if Defendants decide that that private person or non-party organization is sufficiently tied to a candidate as to become "a distinctive features of [the] candidate's … biography." *Id.* § 6200.10(b)(1)(ii)(c)(2)(i).

The Statute, as interpreted by the Regulation, thus raises the exact concern flagged in *Buckley* – i.e., that because "candidates campaign on the basis of their positions on various public issues" premising regulatory coverage on whether discussion of an issue implicitly references a candidate will inevitably lead to self-censorship of discussion of public issues. 424 U.S. at 42. That is what happened here. A–10, 15-17, 31 (¶¶ 2, 19, 24, 78-79).

---

argued that the Proposed Advertisement's references to "higher taxes" and "defunding the police," referred to Candidate Mamdani despite him disavowing these positions. *Id.* at 60-61.

### 2. The District Court Failed to Resolve the Ambiguity as to Whether the Statute Applies to the Proposed Advertisements.

The district court found that "Plaintiff's theory that it is utterly unclear whether the Statute, as interpreted by the Regulation, applies to the Proposed Advertisements is unlikely to succeed on the merits." A–102 (internal quotation marks omitted). But the district court never indicated whether or not it believed the Proposed Advertisements referenced a "clearly identified candidate" within the meaning of the Statute or Regulation.

Rather, the court side-stepped that question by concluding that the portion of the Regulation that AFF challenged as vague did not apply within sixty days of an election. Under the Statute, three categories of communications are deemed "independent expenditures": subsection (i) covers express advocacy "irrespective of when such communication is made"; section (ii) covers communications that "refer[] to and advocate[] for or against a clearly identified candidate ... on or after January first of the year of the election in which such candidate is seeking office"; and subsection (iii) covers communications that "include[] or reference[] a clearly identified candidate" and are made "within sixty days before a general or special election." N.Y. Elec. L. § 14-107(a). The district court found that subsection (ii) could not apply to the Proposed Advertisements because they "would run 'within sixty days' of New York City's upcoming election." A–100 (quoting N.Y. Elec. L. § 14-107(a)(iii)). Because the challenged portion of the Regulation (i.e., the (2)(c)(ii)

28

Factors) only interpret subsection (ii) of the Statute, the district court felt its work was done.

This was error. To be sure, communications made "within sixty days" of a general election trigger NY's "independent expenditure" definition if they meet subsection (iii)'s substantive requirements. But, under the Statute's plain text, communications made "on or after January first of the year of the election" also trigger NY's "independent expenditure" definition if they meet subsection (ii)'s substantive requirements. For that matter, communications that meet subsection (i)'s substantive requirements constitute an "independent expenditure" "irrespective of when such communication is made," including within sixty days of an election. By using the disjunctive "or" to connect the three subsections, the Statute is clear that each constitutes an independent avenue for triggering the statutory definition. Indeed, the Regulation explicitly provides that an expenditure constitutes an "independent expenditure … provided such expenditure … meets *one* of the three content and timing criteria" set forth in the Statute and the Regulation. 9 N.Y.C.R.R. § 6200.10(b)(1) (emphasis added). The district court's sua sponte theory that, within sixty days of an election, subsection (iii) displaces the other two subsections contradicts the plain text of the Statute and the Regulation and was disclaimed by Defendants in their briefing and at the post-oral argument hearing. A–78; *see* Statement of the Case, Sec. G.

29

The district court further concluded that the Regulation's (ii)(c)(2) Factors only interpret the statutory term "advocates for or against" and thus "cannot reasonably be understood … to displace the Statute's definition of 'clearly identified candidate.'" A–100 (internal quotation marks omitted). But subsection (c)(2) of the Regulation interprets the whole of subsection (a)(ii) of the Statute, not just its advocacy requirement. It provides that "[f]or purposes of determining that a communication is advocating for or against *a candidate* or ballot proposal, the following factors shall be considered." *Id.* § 6200.10(b)(1)(ii)(c)(2) (emphasis added). And, while some of the (ii)(C)(2) Factors that follow go to whether a communication should be construed as advocating, *see* 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(2)(ii), other (ii)(C)(2) Factors clearly go to whether the communication should be interpreted as referencing a candidate. The first (ii)(c)(2) factor, for instance, asks "whether [the communication] identifies a particular candidate by name or other means such as party affiliation or distinctive features of a candidate's platform or biography or identifies a ballot proposal." 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(2)(i). On its face, this factor governs whether a communication "*identifies* a particular candidate," not whether it advocates for one. *Id.* (emphasis added). Indeed, in this very case, the State has used this (ii)(c)(2) factor to argue that the Proposed Advertisements should be construed as references to Zohran Mamdani. *See* Defs.' Opp'n Br., at 20-21 ("Plaintiff's ads unambiguously

30

refer to candidate Mamdani" because "[t]he DSA is … a 'distinctive feature of [Mamdani's] ... biography' in a way that cannot credibly apply to any other current candidate for citywide office" (quoting 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(2)(i)).

To be sure, the Regulation says the (c)(2)(ii) Factors are to be used "[f]or purposes of determining that a communication is advocating for or against *a candidate*," 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(2), whereas subsection (a)(ii) of the Statute covers a communication that "advocates for or against a *clearly identified* candidate," N.Y. Elec. L § 14-107(a)(ii). But the Regulation's dropping of "clearly identified" hardly prevents any attempt to broadly read subsection (a)(ii) of the Statute to cover ads that only implicitly "identif[y] a particular candidate by name or other means such as party affiliation or distinctive features of a candidate's platform or biography." 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(2)(i). If anything, it further reveals the Regulation's intent to expand the Statute to cover such implicit references to candidates.

In any event, if the district court believed the Regulation's vagueness could be resolved through its narrowing interpretation, the correct course would have been to grant the preliminary injunction to prohibit Defendants from continuing to chill AFF's speech by threatening enforcement for running the Proposed Advertisements. The whole purpose of the heightened vagueness standard for speech regulations is to prevent the state from chilling free speech by creating uncertainty as to whether

that speech will be targeted under a vague regulation. *See Buckley*, 424 U.S. at 41. If a vagueness objection can be overcome by a narrow reading of a text that is "readily susceptible to the limitation," courts must impose a "narrowing construction" on the state to protect against the chilling effect of an unclear statute or regulation. *VRLC I*, 221 F.3d at 386.

But, here, the Court declined to issue an injunction or limiting construction. This leaves AFF with no way to remedy the ongoing harm from the threat of enforcement. Indeed, the court's interpretation of the Statute and Regulation is not binding on Defendants, who continue to threaten enforcement on AFF and cause an unconstitutional chilling effect. *See Oneida Indian Nation of N.Y. v. Pifer*, 43 A.D.3d 579, 581, 840 N.Y.S.2d 672 (3d Dep't 2007) ("Federal court rulings on issues of state law are not binding on state courts." (citing *In re 1616 Second Ave. Rest.*, 550 N.E.2d 910, 913 (N.Y. 1990))).

Finally, the district court was wrong to suggest that AFF is only faulting Defendants for "not following the [Statute's or the Regulation's] plain text." A–101 AFF's claim is that the Regulation's text is itself vague because its (2)(c)(ii) Factors *can reasonably* be read to expand the Statute to cover communications that only implicitly refer to candidates by attacking issues or organizations associated with them. *See* A–26-31. That the New York Attorney General and SBOE read the Regulation that way, whereas the district court does not, simply illustrates the

Regulation's vagueness. When "reviewing a statute's language for vagueness" courts consider "the interpretation of the statute given by those charged with enforcing it." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 187 (2d Cir. 2010) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). Just as a narrowing interpretation can save a law from vagueness, a broad interpretation can illustrate a law's vagueness or even render an otherwise clear law impermissibly vague. *See United States v. Protex Indus., Inc.*, 874 F.2d 740, 743 (10th Cir. 1989) (noting that a statute can be void for vagueness, as applied, as a result of a retroactive expansion of precise statutory language through interpretation).

### A. The Statute and Regulation Cannot Constitutionally Be Applied to the Proposed Advertisements.

#### 1. Disclaimer and Disclosure Requirements Violate the First Amendment When Applied to Issue Ads that Do Not "Explicitly and Unambiguously" Reference a Candidate.

First Amendment protections are at their zenith when they concern "core political speech" and the right of citizens to associate with one another for the purposes of engaging in "core political speech." *Meyer v. Grant*, 486 U.S. 414, 421 (1988); *see also NAACP v. Alabama*, 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association."). Accordingly, laws that compel political speakers to include government-mandated messages as part of their political speech, and that compel public policy organizations to publicly reveal their identities

33

and those of their donors, "seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley*, 424 U.S. at 64, 66; *accord Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 91 (1982); *see also Citizens Union of N.Y. v. AG of N.Y.*, 408 F. Supp. 3d 478, 494 (S.D.N.Y. 2019) (Cote, J.) ("There is no question that public disclosure of donor identities burdens the First Amendment rights to free speech and free association.") (collecting cases). "[T]he invasion of privacy of belief" caused by such "compelled disclosure[s] … may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for financial transactions can reveal much about a person's activities, associations, and beliefs." *Buckley*, 424 U.S. at 64, 66.

Because of these severe burdens on freedom of speech and association, disclaimer and disclosure requirements are subject to "exacting scrutiny." *See, e.g.*, *Citizens United*, 558 U.S. at 366–67; *accord Buckley*, 424 U.S. at 64; *VRLC II*, 758 F.3d at 132–33. This requires the government to show a "substantial relation between the disclosure requirement and a sufficiently important governmental interest," *Citizens United*, 558 U.S. at 367 (quotations omitted); *Buckley,* 424 U.S. at 64, 66 (describing exacting scrutiny as a "strict test" requiring more than "a mere showing of some legitimate governmental interest"). Exacting scrutiny also requires that disclosure regimes "be narrowly tailored to the government's asserted interest."

34

*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 608 (2021). Laws that are "no more than tenuously related to the substantial interests disclosure serves ... fail exacting scrutiny." *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 204 (1999).

The Supreme Court has recognized just two government interests that are sufficient to justify laws requiring political speakers to reveal their and their donors' identities: preventing *quid pro quo* corruption, *see Buckley*, 424 U.S. at 66–67, and "provid[ing] the electorate with information about the sources of election-related spending," *Citizens United*, 558 U.S. at 376; *see also VRLC II*, 758 F.3d at 133. *Buckley* permitted regulation of contributions directly to candidates because of the risk that "large contributions are given to secure a political quid pro quo from current and potential office holders." 424 U.S. at 26-27. This logic has been extended to justify disclosure requirements for express advocacy about candidates, speech that is the "functional equivalent" of such express advocacy, and even speech that merely references a "clearly identified candidate" closely before an election. *See, e.g.*, *Citizens United*, 558 U.S. at 369. Importantly, these cases use "clearly identified candidate" as defined by *Buckley* and codified into federal law and regulation, i.e., to require an "explicit and unambiguous" reference.

But the Supreme Court has cautioned that "the interests that justify the regulation of campaign speech might not apply to the regulation of genuine issue ads" because the regulation of the latter does not serve the same substantial

35

government interests as regulation of the former. *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 471 (2007) (*WRTL*) (quotation omitted). Accordingly, this Court struck down a Vermont statute that "impose[d] disclosure requirements on 'communications ... which expressly *or implicitly* advocate[] the success or defeat of a candidate.'" *VRLC I*, 221 F.3d at 387 (emphasis added). As this Court explained, "the term 'implicitly'" improperly "extends the reach of [Vermont's] disclosure requirement to advocacy with respect to public issues." *Id.* (collecting cases). This "constitutional defect[]" was "particularly serious because of [its] impact on anonymous communications, which have played a central role in the development of free expression and democratic governance." *Id.* Similarly, Judge Cote invalidated provisions of New York's Ethics Law which required 501(c)(4) organizations, like AFF, "to publicly disclose its donors if it makes a public statement that refers to and advocates for or against," not only "a clearly identified elected official," but also "*the position* of any elected official or administrative or legislative body relating to the outcome of any vote or substance of any legislation." *Citizens Union of N.Y.*, 408 F. Supp. 3d at 490 (emphasis added).

These cases recognize that applying disclaimer and disclosure requirements to issue ads that do not reference a "clearly identified candidate," as that term has been interpreted since *Buckley* (i.e., an "explicitly and unambiguous reference"), does not bear a sufficiently "substantial relation" to the government interests of

preventing public corruption or "provid[ing] the electorate with information about the sources of election-related spending." *Citizens United*, 558 U.S. at 367. Indeed, New York attempted to defend its 2016 Ethics Law as intended to "reveal the funders of issue advocacy communications ... including donors who seek to funnel money to 501(c)(4)s" in order to "provid[e] the public with much-needed information on important issues … and help[] deter corruption and avoid the appearance of corruption." *Citizens Union of N.Y.*, 408 F. Supp. 3d at 505. Yet, as Judge Cote explained, when it comes to issue ads that do not reference "clearly identified candidates," the link between these government interests and the disclosure requirements "is too attenuated" to "justify the burden on First Amendment rights," specifically the "long recognized" right "to publicly discuss and advocate on issues of public interest, and to do so anonymously." *Id.* at 505-07 (collecting Supreme Court cases that "strongly suggest that compelled identity disclosure is impermissible for issue-advocacy communications").

This Court did, in a footnote, state that "it is unclear whether *VRLC I*'s holding that 'pure issue advocacy' cannot be the subject of a valid governmental regulation remains viable" considering the Supreme Court's decisions upholding disclosure requirements in *McConnell* and *Citizens United*. *VRLC II*, 758 F.3d at 131 n.11. But *VRLC II* felt no need to reconsider *VRLC I* because "Vermont's more recent statute does not reach pure issue advocacy." *Id.* Accordingly, *VRLC I*'s holding remains

37

binding precedent and any *VRLC II* suggestion to the contrary is merely dicta. *See 4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202, 211 n.8 (2d Cir. 2019) (explaining that courts within the Second Circuit are bound by the decision of prior panels "until such time as they are overruled either by an en banc panel of [the Second Circuit] or by the Supreme Court" (quotation omitted)).

In any event, as Judge Cote explained in 2019, New York's argument that "the Supreme Court has rejected any distinction between electioneering communications and issue advocacy ... rests on a misreading of the relevant cases." *Citizens Union of N.Y.*, 408 F. Supp. 3d at 507. *McConnell* merely held that disclosure requirements can be applied beyond communications containing "magic words" such as "support" and "oppose," and instead upheld disclosure requirements for "electioneering communications" which was still limited to speech "clearly identifying a candidate for federal office." *McConnell v. FEC*, 540 U.S. 93, 197-98 (2003). *Citizens United* likewise upheld disclosure requirements for "electioneering communication" that "refers to a clearly identified candidate," as applied to a commercial for a movie critical of Hillary Clinton, on the ground that "the public has an interest in knowing who is speaking about a candidate shortly before an election." *Citizens United*, 558 U.S. at 321, 369.

Those cases simply "do not support New York's argument that it can regulate issue advocacy untethered to any electioneering communication." *Citizens Union of*

38

*N.Y.*, 408 F. Supp. 3d at 508; *see also Indep. Inst. v. FEC*, 216 F. Supp. 3d 176, 187 (D.D.C. 2016), *aff'd*, 137 S. Ct. 1204 (2017) ("[I]t is the tying of an identified candidate to an issue or message that justifies the Bipartisan Campaign Reform Act's tailored disclosure requirement."). *VRLC II* recognized as much by upholding the Vermont statute because, unlike the previous Vermont statute stuck down in *VRLC I*, the new statute's disclosure requirement was limited to "communication that refers to a clearly identified candidate" and thus bears "a substantial relation to the public's 'interest in knowing who is speaking about a candidate shortly before an election.'" *VRLC II*, 758 F.3d at 133-34 (quoting *Citizens United*, 558 U.S. at 369).

### 2. Because the Proposed Advertisements Do Not Explicitly and Unambiguously Identify a Candidate, the Statute is Unconstitutional As Applied to Them.

According to Defendants, the Statute applies to the DSA Advertisements because "Mamdani is the only candidate for citywide office in the 2025 election endorsed on the New York City DSA's website." Defs.' Opp'n Br., at 21. But a reference to the DSA is simply not an "explicit and unambiguous reference" to a candidate DSA endorses, *Buckley*, 424 U.S. at 43, and Defendants have not shown that a substantial state interest justifies extending its disclaimer and disclosure requirements to communications that lack such references.

An "explicit" reference to a candidate, as used in *Buckley*, requires a proper name, title, or description that uniquely describes one person, such as "use of the

candidate's initials (e. g., FDR), the candidate's nickname (e. g., Ike), his office (e. g., the President or the Governor of Iowa), or his status as a candidate (e. g., the Democratic Presidential nominee, the senatorial candidate of the Republican Party of Georgia)." *Id.* at 43 n. 51.

But the DSA is not a political party; it is a "socialist … political and activist organization." https://www.dsausa.org/. Moreover, as a registered 501(c)(4) organization, the DSA cannot "direct[ly] or indirect[ly] participat[e] or interven[e] in political campaigns on behalf of or in opposition to any candidate for public office" and may only engage in political activities so long as those activities are not its "primary activity." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(ii); *Citizens Union of N.Y.*, 408 F. Supp. 3d at 484. While an ad critiquing a political party may call to mind its nominees, a critique of a social welfare organization does not unambiguously single out any candidate, certainly not "explicitly."

That the DSA endorses candidates does not turn any criticism of the DSA into an "explicit and unambiguous" reference to a particular candidate. For starters, DSA endorsed three candidates in last November's New York City elections. https://socialists.nyc/endorsements/. And a variety of institutions—newspapers, unions, nonprofits, etc.—endorse candidates; that does not make those institutions synonymous with those candidates such that any criticism of the institution is an "explicit" reference to the candidate(s) the institution endorses. To be sure, *Buckley*

40

acknowledged that a candidate could be explicitly and unambiguously referenced via their "status as a candidate," such as "the Democratic Presidential nominee." *Buckley*, 424 U.S. at 43 n.51. But the Proposed Advertisements do not reference "the DSA-candidate," "the candidate the DSA-endorsed," or anything remotely similar. The ads do not even mention that the DSA endorses candidates.

Moreover, as required by its 501(c)(4) status, the DSA's activities are far broader than endorsements or electoral politics. Rather, the DSA uses "a variety of tactics, from legislative to direct action, to fight for reforms" to advocate for socialist policies and ideas. *Democratic Socialists of America Home Page*, https://www.dsausa.org/; *see supra*, Statement of the Case, Sec. B. Given its breadth and the legal requirement that politics are not its "primary activity," a denunciation of DSA is naturally read as a critique of DSA's socialist policies. It is certainly not "an explicit and unambiguous reference" to any of the candidates DSA has endorsed. *Buckley*, 424 U.S. at 43.

What Defendants are really trying to do is extend the Statute to go further than communications that reference "clearly identified candidates," as that term was defined in *Buckley* and in federal law, i.e., "an explicit and unambiguous reference" to candidates. *Id.* Indeed, Defendants read the Statute to cover "references to particular candidates" that are "not express," Defs.' Opp'n Br., at 19, such as references to policy organizations Defendants deems to be "a 'distinctive feature of

41

[a candidate's] ... biography,'" *id.* at 21 (quoting 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(2)(i)). Only by adopting this broad reading of the Statute can Defendants extend its reach to the Proposed Advertisements.

But this Court has already held that the First Amendment prohibits applying disclosure and disclaimer requirements to issue ads that only *implicitly* reference candidates. *See VRLC I*, 221 F.3d at 388 (applying disclosure requirements to "issue advocacy that implicitly endorses a candidacy" violates the First Amendment); *see also Citizens Union of N.Y.*, 408 F. Supp. 3d at 506 (finding New York's disclosure requirements overbroad because they are "not confined to disclosure where the entity engages in express advocacy for a candidate or electioneering").

If New York wishes to extend its disclaimer and disclosure requirement beyond communications that contain "explicit and unambiguous reference[s]" to candidates, *Buckley*, 424 U.S. at 43, that is, to go further than what the Supreme Court and this Court has approved, then New York had the burden of showing that a substantial state interest justifies that extension and the resulting burden it will place on issue advocacy, *see id.* at 25 ("[A] significant interference with protected rights of political association may be sustained *if the State demonstrates* a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedom" (emphasis added) (quotations omitted)); *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) (where plaintiff challenges

42

a regulation that burdens protected speech, the government bears the burden, at the preliminary injunction stage, to show the regulation clears the appropriate tier of scrutiny); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) ("[T]he burdens at the preliminary injunction stage track the burdens at trial.").

But Defendants have never even admitted that they seek to apply the Statute beyond communications that reference "clearly identified candidates" as *Buckley* defined that term, much less attempted to justify doing so. In particular, Defendants have never even tried to show that applying disclaimer and disclosure requirements to communications that merely implicitly reference candidates by criticizing ideologies or political organizations associated with candidates bears a "substantial relation" to "a sufficiently important governmental interest." *Citizens United*, 558 U.S. at 367.

New York has not, for instance, offered any evidence that any candidate has or would offer official action in exchange for donating $1000 to an organization that does not coordinate with the candidate and merely runs issue advertisements that do not even name or explicitly reference any candidate. *See WRTL*, 551 U.S. at 479 ("Issue ads ... are by no means equivalent to contributions, and the quid-pro-quo corruption interest cannot justify regulating them" and rejecting a "prophylaxis-upon-prophylaxis approach to regulating expression"). Nor has New York made

43

any legislative or administrative finding, or offered any "quantum of empirical evidence," to support a finding that extending disclaimer and disclosure requirements to nonprofit organizations running advertisements that do not explicitly mention any candidate is necessary to combat quid pro quo corruption. *Nixon v. Shrink Mo. Gov't Pac*, 528 U.S. 377, 391 (2000). Nor does the recognized "interest in knowing who is speaking about a candidate shortly before an election," *Citizens United*, 558 U.S. at 369, justify requiring disclosure for speech that does not explicitly reference any candidate. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 344, 348 (1995) ("The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit," even if the writer's communication "is designed to influence the voters in an[] election.").

By failing to argue below that it constitutionally could apply its disclaimer and disclosure requirements to communications that only implicitly reference, and by failing to even try to meet its burden of showing that such an application would satisfy exacting scrutiny, the State waived any argument that it can constitutionally apply the Statute to communications that merely criticize organizations that have endorsed a candidate. *See Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382, 388-89 (2d Cir. 2018) ("arguments not presented to the district court are considered waived and generally will not be considered for the first time on

appeal").

### 3. The District Court Erred By Failing To Consider Whether the Statute Is Constitutional As Applied to the Proposed Ads.

The district court never analyzed whether the Statute is constitutional as applied to the Proposed Advertisements.[6] It did not decide whether the Proposed Advertisements' references to the DSA constitute "explicit and unambiguous reference[s]" to a candidate. *Buckley*, 424 U.S. at 43. Nor did the court decide whether Defendants are correct in asserting that, even without an explicit reference to a candidate, they can still constitutionally apply the Statute to the Proposed Advertisements based on a "not express" reference to a distinctive part of a candidate's biography (e.g., the DSA). Defs.' Opp'n Br., at 19, 21. In fact, the court's analysis of AFF's likelihood of success on its First Amendment claim did not mention the Proposed Advertisements or the DSA a single time. *See* A–102-05.

Rather, the district court merely analyzed whether the Statute is facially unconstitutional. And it found that it was because the Statute's text is identical to the Vermont statute upheld in *VRLC II*, *see* A–103 n.14, and because the Statute serves the same general state interests that were approved by *Citizens United* and *VRLC II*, *see id.* at 104 ("'These public benefits are in line with the informational interest approved by *Citizens United*.'" (quoting *VRLC II*, 758 F.3d at 134)); *id.*

---

[6] This failure is particularly inexplicable given that the court repeatedly acknowledged that AFF was making an as-applied challenge. *See* A–75, 77, 96, 97.

45

("[T]he Statute fall[s] 'within the scope of regulation permitted under Citizens United' and [is] 'directly related to the State's informational interest.'" (quoting *VRLC II*, 758 F.3d at 134)).  The district court did, at one point, declare that, under the Statute, "[a] communication only qualifies as an [independent expenditure] if it includes the name or likeness of a clearly identified candidate," and that it "does not reach issue ads that do not reference a 'clearly identified candidate.'" *Id.* at 103 (internal quotation marks omitted).  But it is unclear whether this means the district court believed that the Statute does not reach the Proposed Advertisements, or whether the court believed that the Proposed Advertisements were not "issue ads." *Id.* Although the district court at one point used the term "as applied," *id.* at 104, its analysis simply did not address the essence of an as-applied challenge: whether the Statute can be constitutionally applied to the Proposed Advertisements. *See Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022) (explaining that an "as-applied challenge ... requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right" (quotation omitted)).

The district court apparently believed that it did not have to address whether the Statute is constitutional as applied to the Proposed Advertisements because it did not believe that subsection (a)(ii) of the Statute applies within sixty days of an election, A–100, and or that the Regulation's (2)(c)(ii) Factors expanded the

46

Statute's definition of "Clearly Identified Candidate," *id.* As noted above, these interpretations are wrong and at odds with Defendants' interpretations of the Statute and Regulation. *Supra* at 29.

Even if the district court's reading of the Statute and Regulation were correct, that would not excuse the court from addressing whether the Statute can be constitutionally applied to the Proposed Advertisements, given AFF's unchallenged evidence that it is being forced to self-censor the ads due to a substantial enforcement threat. A–11, 15-17, 26-27, 31 (¶¶ 2, 18-19, 24, 60, 68, 79). Indeed, a plaintiff bringing a pre-enforcement First Amendment challenge "need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has 'an actual and well-founded fear that the law will be enforced against' it." *VRLC I*, 221 F.3d at 382 (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988)). And a plaintiff need not "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights" *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

Rather, "the threat[] [of] enforcement" is sufficient to warrant "pre-enforcement review." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014). That is because constitutional harm "is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution." *American Booksellers,* 484 U.S. at 393; *see also VRLC I* (noting that "the possibility

of civil litigation" can also cause self-censorship sufficient for a pre-enforcement challenge because "[t]he fear of civil penalties can be as inhibiting of speech as can trepidation in the face of threatened criminal prosecution").

Of course, a plaintiff that brings a pre-enforcement challenge alleging it is being required to self-censor must show that it faces a "'credible threat'" of enforcement under the challenged statute. *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). A "credible threat" is readily shown if a government official charged with enforcement authority threatens to enforce the statute against the plaintiff if the plaintiff takes its intended course of action. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014) (concluding that "the specter of enforcement is so substantial" when regulators explicitly "threaten[] [enforcement] proceedings"). A threat is likewise credible where, as here, the government refuses to "disavow enforcement" during the course of litigation. *Cerame v. Slack*, 123 F.4th 72, 87 (2d Cir. 2024); *Upsolve, Inc. v. James*, 155 F.4th 133, 140 (2d Cir. 2025) (determining that there was "credible threat of prosecution" in part because "the Attorney General declined to disavow enforcement against Plaintiffs at oral argument" before the district court).

Even where (though it is not the case here) the government asserts that the challenged "statute does not reach the expressive activities in which [the plaintiff] wishes to engage," and represents that it has "no intention of suing [plaintiff] for its

48

activities," a plaintiff can still show a sufficiently credible threat to bring pre-enforcement constitutional challenge. *VRLC I*, 221 F.3d at 382-83.  The plaintiff need only show that the interpretation of the challenged statute that reaches its activities is "reasonable enough that it may legitimately fear that it will face enforcement of the statute" even if "there may be other, perhaps even better" interpretations of the challenged statute that would not reach plaintiff's intended speech. *Id.* at 383.

Here, AFF submitted a verified complaint testifying that it was forced to self-censor the Proposed Advertisements because it faced substantial and imminent risk of investigations, enforcement actions, or criminal prosecution.  A–11, 15-17, 26-27, 31 (¶¶ 2, 18-19, 24, 60, 68, 79). Defendants did not challenge this factual evidence at the preliminary injunction hearing, or in any of its briefing. To the contrary, Defendants argued that AFF would violate New York law if it ran the Proposed Advertisements.  Accordingly, Defendants waived any argument that AFF has not been forced to self-censor due to a genuine and reasonable fear of enforcement. *See Anderson*, 884 F.3d at 388-89.

Moreover, even if the district court was correct that subsection (a)(ii) of the Statute and the Regulation's (2)(c)(ii) Factors do not apply to the Proposed Advertisements, AFF's fear of an enforcement would still be reasonable because the State could still bring an enforcement action under Subsection (a)(iii) of the Statute.

That subsection indisputably applies "within sixty days before a general or special election" and covers communications that "reference[] a clearly identified candidate." N.Y. Elec. L. § 14-107(a). And Defendants clearly believe the Proposed Advertisement reference a "clearly identified candidate" within the meaning of the Statute. Def.'s Opp'n Br., at 19, 21. That position, if accepted, would state a violation of subsection (a)(iii) of the Statute and the district court never indicated this statutory interpretation is wrong, much less not "reasonable enough that [AFF] may legitimately fear that it will face enforcement of the statute." *VRLC I*, 221 F.3d at 383.

Finally, even if AFF did have a strong and complete statutory defense to any enforcement action that the State may bring over the Proposed Advertisements, Defendants' threats to bring such an action would still cause sufficient constitutional injury. AFF has alleged that the mere threat of an enforcement action, with the time and expense that it would impose, has caused and is causing them to self-censor the Proposed Advertisements. A–26, 31, 33 (¶¶ 60, 79, 92). That self-censorship is itself a constitutional injury that AFF can bring an as-applied pre-enforcement action to address, even if AFF might ultimately prevail on statutory grounds should it face such an action. *See Dombrowski v. Pfister*, 380 U.S. 479, 494 (1965) ("[T]he prospect of ultimate failure of such prosecutions by no means dispels their chilling effect on protected expression."); *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*,

50

477 U.S. 619, 625 n.1 (1986) (explaining that the fact that plaintiffs "m[ight] prevail[]" if they are ultimately "prosecuted" does not defeat pre-enforcement review). The district court's failure to address this ripe allegation of ongoing and irreparable constitutional harm was error.[7]

## II.    AFF IS SUFFERING ONGOING IRREPARABLE HARM.

The "loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Green Party v. N.Y. State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004). AFF is suffering a loss of its First Amendment freedoms through self-censorship driven by the threat of enforcement action by Defendants, a fact Defendants did not dispute. A–15-17, 31 (¶¶ 18-19 78-79). In order to run its desired ads, AFF is forced either to comply with burdensome disclosure and registration requirements or to risk a costly investigation with devastating enforcement penalties, all in violation of its First Amendment rights. Moreover, AFF's censored speech is political, a category that occupies the highest rung of First Amendment protection

---

[7] If the district court meant to apply the constitutional avoidance canon, it should have granted the preliminary injunction. Without relief, AFF continues to face a substantial risk of an enforcement action, which is causing it to have to continue to self-censor.  The district court's opinion that the Statute should not be read to cover the Proposed Advertisements—even if it had given such an opinion clearly—would not protect AFF from an enforcement action in New York state court and, accordingly, does not protect AFF from the ongoing constitutional harm of self-censorship. *See Oneida Indian Nation*, 43 A.D.3d at 581.

and heightens the irreparability of AFF's injury. *See Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 880 F. Supp. 2d 456, 466 (S.D.N.Y. 2012) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964)); *see also N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) ("[H]arm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable." (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)).

The district court, thus, erred for two reasons in holding that AFF is not entitled to a presumption of irreparable harm—a presumption that applies in cases involving the deprivation of First and Fourteenth Amendment rights. *See Evergreen Ass'n v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014).

First, the district court relied on its erroneous holding that AFF is unlikely to succeed on the merits, A–106, thereby undermining its ability to correctly evaluate the irreparable harm prong.

Second, the district court erred in holding that, even if AFF succeeds on the merits, it is not entitled to the presumption of irreparable injury that arises under *Elrod*, 427 U.S. at 373, because the challenged regulation, according to the district court, "function[s] as a disclosure requirement, not [as] a direct limit on speech." A–106 (quoting *Citizens United v. Schneiderman*, 115 F. Supp. 3d 457, 473 (S.D.N.Y. 2015)).

Defendants' threat of enforcement, however, *did* "direct[ly] limit [AFF's] speech" by causing them to self-censor their political speech—a fact that Defendants have not disputed. As this Court has held, a law that "compels Plaintiffs to make disclosures or face penalties, is clearly a direct limitation on speech that creates a presumption of irreparable harm." *Evergreen*, 740 F.3d at 246. AFF, therefore, more than clears the hurdle set by *Schneiderman*, which merely stands for the uncontroversial proposition that a plaintiff must allege more than a hypothetical harm when alleging "injury from a rule or regulation that may only potentially affect speech." *Id.* (plaintiffs only alleged harm that consisted of the *possibility* that a challenged policy will "deter[] potential donors from making financial contributions," thereby curtailing speech and that "the Attorney General *may* suspend or cancel plaintiffs' charitable registrations" (quoting *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 350 (2d Cir. 2003) (emphasis added))).

The harm AFF alleges here is anything but hypothetical and the Statute and Regulation at issue more than "potentially affect[ed] [AFF's] speech." *Id.* The threatened enforcement action has sidelined AFF from a key political and ideological debate.

## III.  THE EQUITIES FAVOR A PRELIMINARY INJUNCTION

The balance of the equities and the public interest, which merge in cases where, as here, the "government is a party to the suit," tip decisively in favor of AFF.

*We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021).

A preliminary injunction is in the public interest where, as it would here, it protects constitutional rights, prevents the enforcement of laws that are harmful to the public, and ensures that the government complies with legal standards. *See Aguilar v. Decker*, 482 F. Supp. 3d 139, 150 (S.D.N.Y. 2020) ("[T]he public interest is best served by ensuring that the constitutional right[s]" of persons within the United States are "protected"). On the other side of the ledger, no public interest is served by Defendants applying the Statute in an unconstitutional fashion. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("Securing First Amendment rights is in the public interest ... the Government does not have an interest in the enforcement of an unconstitutional law." (internal quotation, alteration, and citations omitted)). Moreover, diverse voices such as those contained in the Proposed Advertisements promote democratic values and further the public interest. *See McCutcheon v. FEC*, 572 U.S. 185, 203–04 (2014) (explaining that free and robust discussion on political issues and elections is "integral to the operation of the system of government established by our Constitution" (quoting *Buckley*, 424 U.S. at 14)).

The district court, in its balance of equities and public interest analysis, summarily rejected this argument because it determined that AFF "is not likely to succeed on the merits of its as applied challenge." A–107. Because the district court

erred on that merits finding, it also erred in balancing the equities.

The district court also emphasized the benefits to New Yorkers of the "disclosure" and "transparency" that "continued enforcement" of the Statute and Regulation would bring and the danger that an injunction would "prevent New York City voters from receiving th[e] important informational benefit" gleaned from knowing "who [wa]s speaking about a candidate shortly before an election." *Id.* at 107-08. However, this analysis overlooks the core issue: the lack of clarity and overbreadth of the Regulation, which leads to self-censorship and, consequently, *less* speech and *less* information available to the public. AFF's challenge is not just to disclosure itself but to the confusion and uncertainty regarding the applicability of the Regulation and Statute.

The district court's conclusion that "an injunction risks creating confusion and uncertainty as to the application of the Statute," *id.* at 108, fails to account for the significant confusion and uncertainty that now exists because of the lack of clarity about the Regulation. That, along with the fact that its analysis was tainted by its ruling on the likelihood of success, constituted reversable error.

## IV.   THE CLAIMS ARE NOT MOOT

A case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). "[A]s long as the parties

have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* at 307-08 (internal quotation marks omitted).

AFF's dispute with Defendants is still very much alive. AFF still wishes to run its Proposed Advertisements, which relate to an ideology and a set of policy proposals that are still very relevant in New York. Moreover, the Proposed Advertisements that Defendants most clearly targeted, the DSA Advertisements, concern an organization that continues to endorse candidates for New York public office and whose influence in New York politics and policy continues to grow. *See* Statement of the Case, Sec. B. As long as the DSA continues to endorse New York candidates and participate in debates surrounding New York elections, AFF has every reason to fear that it cannot run the Proposed Advertisements "on or after January first of the year of the election in which [a DSA-endorsed] candidate is seeking office," which would include 2026. N.Y. Elec. L. § 14-107(a)(ii). The possibility that Defendants *might* not apply the same logic to other DSA-endorsed candidates that it applied to Mr. Mamdani does nothing to remove the substantial threat of enforcement AFF faces, or the accompanying ongoing constitutional injury of self-censorship.

Alternatively, this case falls neatly within "the established exception to mootness for disputes capable of repetition, yet evading review," because "'(1) the challenged action is in its duration too short to be fully litigated prior to cessation or

56

expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *WRTL*, 551 U.S. at 462 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Challenges to election laws are one of the quintessential categories of cases that evade review "because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits." *Walsh*, 714 F.3d at 692 (quoting *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003)).

Here, AFF was unable to obtain complete judicial relief of its claims during the Statute's brief duration (which, especially on the district court's reading, changes throughout the year). Indeed, in the context of political advertisements, the Supreme Court has explained that even a "2-year window between elections" is an insufficient amount of "time for parties to litigate their rights before each [statutory provision applies]" because groups like AFF "cannot predict what issues will be matters of public concern" near an election. *WRTL*, 551 U.S. at 462. AFF "had no way of knowing well in advance that it would want to run ads on [socialism or the DSA] during the [restrictive] period" near the election and therefore, like the plaintiff in *WRTL*, did not have the time to vindicate its rights before expiration of the statutory restriction. *Id.*

Additionally, there is a "'reasonable expectation'" that "the same controversy will recur involving the same complaining party," because AFF intends to run the

57

Proposed Advertisements, as well as materially similar ones criticizing the DSA, in 2026 which will fall within the reach of New York's independent expenditure laws. *Murphy* v. *Hunt*, 455 U.S. 478, 482 (1982) (*per curiam*). Because DSA is a growing organization that continues to endorse candidates, there is a more than hypothetical risk that AFF will face the same risk of enforcement for running its advertisements in the future. *See Walsh*, 714 F.3d at 692 (pre-enforcement challenge to election disclosure law "capable of repetition, yet evading review" because entity planned to do "materially similar" advertising, which would trigger application of the challenged law); *WRTL*, 551 U.S. at 463 (concluding election related challenge not moot because plaintiff "credibly claimed that it planned on running 'materially similar' future targeted broadcast ads" within the statutory timeframe, and "there is no reason to believe that the FEC will 'refrain from prosecuting violations'").

Therefore, AFF's "injury of self-censorship is capable of repetition yet evading review." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 n.4 (9th Cir. 2003).

## CONCLUSION

The judgment of the district court should be reversed and the case remanded for further proceedings.

Dated: December 19, 2025

Respectfully submitted,

58

By:   /s/ Jason B. Torchinsky

Jason B. Torchinsky
D.C. Bar No. 976033
Kellen S. Dwyer
N.Y. Bar No. 4796686
Andreas N. Episkopos
D.C. Bar No. 90033371
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
2300 N Street NW,
Suite 643
Washington, D.C. 20037
jtorchinsky@holtzmanvogel.com
kdwyer@holtzmanvogel.com
aepiskopos@holtzmanvogel.com
Phone: (202) 737-8808

Susan L. Greene
NY Bar No. 4687349
Joeseph T. Burns
NY Bar No. 4411666
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
5360 Genesee Street, Suite 203
Buffalo, NY 14026
sgreene@holtzmanvogel.com
jburns@holtzmanvogel.com
Phone: (716) 647-6103

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Jason B. Torchinsky, counsel for appellant and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and Second Circuit Rule 32.1(a)(4)(A), that the attached Brief of Plaintiff-Appellant is proportionately spaced, has a typeface of 14 points or more, and contains 13,676 words.

December 29, 2025

*/s/Jason B. Torchinsky*
Jason B. Torchinsky

60

## CERTIFICATE OF SERVICE

I, Jason B. Torchinsky, certify that on December 19, 2025, I caused a true and correct copy of the foregoing document to be filed and served electronically via the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

/s/ Jason B. Torchinsky
Jason B. Torchinsky


*Counsel for Plaintiff-Appellant*
