# 25-2781

# United States Court of Appeals
# for the Second Circuit

AMERICAN FUTURE FUND, INC.,

*Plaintiff-Appellant,*

v.

NEW YORK STATE BOARD OF ELECTIONS, KATHLEEN C. HOCHUL, In her official capacity as Governor of the State of New York, LETITIA JAMES, in her official capacity as Attorney General of the State of New York, MICHAEL L. JOHNSON, in his official capacity as Chief Enforcement Counsel for the New York State Board of Elections Division of Election Law Enforcement,

*Defendants-Appellees.*

NEW YORK CITY CAMPAIGN FINANCE BOARD,

*Defendant.*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR APPELLEES

BARBARA D. UNDERWOOD
  *Solicitor General*
JUDITH N. VALE
  *Deputy Solicitor General*
DANIEL S. MAGY
  *Assistant Solicitor General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellees
28 Liberty Street
New York, New York 10005
(212) 416-6073

Dated: February 6, 2026

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iii

PRELIMINARY STATEMENT................................................................ 1

ISSUES PRESENTED ........................................................................... 4

STATEMENT OF THE CASE ................................................................ 5

    A.   Statutory Framework ...................................................5

    B.   Factual Background and Procedural History .......................... 8

STANDARD OF REVIEW.................................................................... 15

SUMMARY OF ARGUMENT ............................................................... 16

ARGUMENT ..................................................................................... 20

POINT I

    THE COURT SHOULD DISMISS PLAINTIFF'S APPEAL AS MOOT ................ 20

POINT II

    IN THE ALTERNATIVE, THE DISTRICT COURT CORRECTLY DENIED
    PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION......................... 28

    A.   Plaintiff Is Not Likely to Succeed on
        the Merits of Its Claims. ........................................29

        1.   The disclosure requirements are not
            vague under the Due Process Clause. ...........................29

        2.   Application of the disclosure requirements to
            plaintiff's proposed advertisements complies
            with the First Amendment. ......................................38

**Page**

B.  Plaintiff Has Not Demonstrated Irreparable Harm or that the Public Interest Favors a Preliminary Injunction. ........................................................ 45

CONCLUSION ................................................................. 49

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*ABC, Inc. v. Stewart,*
   360 F.3d 90 (2d Cir. 2004) .................................................................. 23

*Already, LLC v. Nike, Inc.,*
   568 U.S. 85 (2013) ............................................................................. 20

*Brokamp v. James,*
   66 F.4th 374 (2d Cir. 2023) ................................................................ 29

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ................................................................... 33, 37, 44

*Center for Individual Freedom v. Madigan,*
   697 F.3d 464 (7th Cir. 2012) .............................................................. 32

*Center for Individual Freedom v. Madigan,*
   No. 10-cv-4383, 2011 WL 13193291 (N.D. Ill. Nov. 3, 2011) ............. 33

*Citizens United v. Federal Election Comm'n,*
   558 U.S. 310 (2010) ............................................................. 38-39, 46-47

*Citizens United v. Schneiderman,*
   882 F.3d 374 (2d Cir. 2018) ................................................ 38-39, 46-47

*Dennin v. Connecticut Interscholastic Athletic Conf., Inc.,*
   94 F.3d 96 (2d Cir. 1996) ................................................................... 24

*Doe v. McDonald,*
   128 F.4th 379 (2d Cir. 2025) .............................................................. 24

*Federal Election Comm'n v. California Democratic Party,*
   No. 2:03-cv-547, 2004 WL 865833 (E.D. Cal. Feb. 13, 2004) ........ 42-44

*Federal Election Commission v. Wisconsin Right to Life, Inc.,*
   551 U.S. 449 (2007) ........................................................................... 27

*Freedom Party of N.Y. v. New York State Bd. of Elections,*
   77 F.3d 660 (2d Cir. 1996) ................................................................. 26

**Cases**                                                                     **Page(s)**

*Hispanic Leadership Fund, Inc. v. Fed. Election Comm'n,*
    897 F. Supp. 2d 407 (E.D. Va. 2012) ....................................... 41-42, 45

*Holder v. Humanitarian L. Project,*
    561 U.S. 1 (2010) ............................................................................... 29

*Independence Inst. v. Williams,*
    812 F.3d 787 (10th Cir. 2016) ......................................................... 39

*Independence Party of Richmond Cnty. v. Graham,*
    413 F.3d 252 (2d Cir. 2005) ................................................... 20, 23, 26

*Lewis v. Continental Bank Corp.,*
    494 U.S. 472 (1990) ......................................................................... 20

*McConnell v. Federal Election Comm'n,*
    540 U.S. 93 (2003) ...................................................................... 31, 36

*Meadors v. Erie Cnty. Bd. of Elections,*
    No. 23-cv-1054, 2024 WL 3548729 (2d Cir. July 26, 2024) .......... 25, 27

*National Organization for Marriage, Inc. v. Walsh,*
    714 F.3d 682 (2d Cir. 2013) ............................................................. 27

*Noem v. Haaland,*
    41 F.4th 1013 (8th Cir. 2022) ......................................................... 25

*Rock of Ages Corp. v. Secretary of Lab.,*
    170 F.3d 148 (2d Cir. 1999) ............................................................. 30

*SAM Party of N.Y. v. Kosinski,*
    987 F.3d 267 (2d Cir. 2021) ................................................... 16, 45, 47

*St. Joseph's Hosp. Health Ctr. v. American Anesthesiology of
    Syracuse, P.C.,*
    131 F.4th 102 (2d Cir. 2025) ........................................................... 16

*Sussman v. Crawford,*
    488 F.3d 136 (2d Cir. 2007) ............................................................. 15

iv

| Cases | Page(s) |
|---|---|

*Town of Newburgh v. Newburgh EOM LLC,*
   151 F.4th 96 (2d Cir. 2025)................................................................24

*Van Wie v. Pataki,*
   267 F.3d 109 (2d Cir. 2001) ............................................................24

*Vermont Right to Life Comm., Inc. v. Sorrell,*
   758 F.3d 118 (2d Cir. 2014) ...................................... 32, 35-36, 38-40

*VIP of Berlin, LLC v. Town of Berlin,*
   593 F.3d 179 (2d Cir. 2010) ........................................................ 30, 37

*Walden v. Kosinski,*
   153 F.4th 118 (2d Cir. 2025)............................................................46

**Federal Statutes**

52 U.S.C.
   § 30101 ......................................................................................31-32
   § 30104 ............................................................................................31

**State Statutes & Regulation**

Election Law
   § 3-104 .............................................................................................. 7
   § 14-100 .............................................................................. 5, 31, 34, 42
   § 14-107 ..................................................................................... passim

9 N.Y.C.R.R. § 6200.10 ..................................................................... passim

**Miscellaneous Authorities**

*Democratic Socialists of America* (n.d.), https://www.dsausa.org/ ...........8

Eva McKend & Gloria Pazmino, *Mamdani Faces Pressure in
   NYC Mayor's Race over Democratic Socialist Ideas*, CNN
   (Aug. 28, 2025), https://www.cnn.com/2025/08/28/
   politics/mamdani-democratic-socialists-cuomo...................................8

v

**Miscellaneous Authorities**                                           **Page(s)**

Hadas Thier, *How DSA Built Zohran Mamdani's Electoral Machine*, Nation (Sept. 12, 2025), https://www.thenation.com/article/politics/zohran-mamdani-dsa-field-operations/ ................................................................... 8-9, 43

N.Y.C. Democratic Socialists of Am., *Zohran Mamdani for New York City Mayor* (n.d.), https://socialists.nyc/zohran-mayor-nyc-dsa/ ............................................................................. 9, 43

Peter Sterne, *DSA Assembly Member Zohran Mamdani Is Considering a Run for NYC Mayor*, City & State N.Y. (July 16, 2024), https://www.cityandstateny.com/politics/2024/07/dsa-assembly-member-zohran-mamdani-considering-run-nyc-mayor/398089/ ........................................... 8-9, 43

Rachel Treisman & Brian Mann, *Mamdani Wins New York City Mayoral Race, in a Historic Victory for Progressives*, NPR (Nov. 5, 2025), https://www.npr.org/2025/11/04/nx-s1-5597788/election-results-zohran-mamdani-new-york-city-mayor ....... 8

Sarah Fortinsky, *Mamdani on Trump Calling Him a Communist: 'I Am a Democratic Socialist'*, Hill (Sept. 29, 2025), https://thehill.com/homenews/campaign/5528179-democratic-socialist-mamdani-defends-politics/ ......... 8-9, 43

Zohran Mamdani, *Inaugural Address* (Jan. 1, 2026), https://www.nyc.gov/mayors-office/news/2026/01/mayor-zohran-mamdani-inaugural-address ................................................. 8

## PRELIMINARY STATEMENT

New York law, like federal law and the laws of many other States, requires organizations that run advertisements referencing a "clearly identified candidate" shortly before an election to satisfy certain disclosure requirements. Plaintiff American Future Fund, Inc., brought this lawsuit one month before New York City's 2025 mayoral election, which was later won by Zohran Mamdani. Mr. Mamdani was the sole candidate for mayor who was a member of the Democratic Socialists of America (DSA). Plaintiff sought a preliminary injunction allowing it to run a series of advertisements shortly before the election without complying with New York's disclosure requirements. The proposed advertisements attacked the DSA, asserting that the DSA was seeking to "control the future of NYC" and "[r]emake the city," and the advertisements urged New Yorkers to "vote" to "stop" the DSA. Plaintiff contended that, as applied to its proposed advertisements, the disclosure requirements were unconstitutionally vague and violated the First Amendment.

The U.S. District Court for the Southern District of New York (Rearden, J.) denied plaintiff's motion, concluding that plaintiff failed to establish (i) a likelihood of success on the merits, (ii) that it would suffer

irreparable harm absent an injunction, or (iii) that the public interest supported an injunction. Plaintiff filed a notice of appeal before the 2025 mayoral election was conducted but did not seek emergency relief from this Court pending appeal. While plaintiff's appeal was pending, Mr. Mamdani won the mayoral election, and he took office as mayor of New York City on January 1, 2026.

First, the Court should dismiss this appeal as moot. This appeal concerns solely plaintiff's motion for a preliminary injunction based on its as-applied claims. But both the as-applied claims and the preliminary injunction motion sought an injunction to allow plaintiff to run advertisements before an election that has now passed. There is no longer any effectual relief, let alone effective preliminary injunctive relief, that this Court can provide plaintiff here. A preliminary injunction can no longer aid plaintiff in running advertisements before the 2025 general election, which has already concluded. And a ruling about whether application of the disclosure rules to the proposed advertisements would comply with the Due Process Clause and First Amendment if the advertisements were run before a 2026 election would be purely advisory. Whether the disclosure rules could constitutionally be applied to the proposed

2

advertisements before a 2026 election is a context-specific inquiry that would present issues different from those presented in plaintiff's motion.

The exception to mootness does not apply. The issues presented here are not likely to recur because any as-applied challenge to the applicability of the disclosure requirements to plaintiff's proposed advertisements in the future would be a different claim relating to a different election with different candidates. And the issues will not evade review in any event. Plaintiff has also brought facial challenges to the disclosure requirements in the district court that raise substantially the same issues as the as-applied claims that are the basis for this appeal, and those facial challenges are not moot. Moreover, plaintiff has ample time before the next election to bring a new as-applied challenge, if it chooses to do so.

Second, if this Court determines that the appeal is not moot, the Court should affirm the district court's denial of plaintiff's motion for a preliminary injunction. The district court correctly concluded that plaintiff failed to establish a likelihood of success on the merits of its as-applied vagueness challenge or its as-applied First Amendment challenge. The Election Law's definition of the phrase "clearly identified candidate" mirrors the definition of the same phrase in federal law and several other

3

States' laws, which the Supreme Court and this Court have held are not vague. Plaintiff also concedes that disclosure requirements for advertisements referencing a clearly identified candidate have been upheld under the First Amendment by the Supreme Court and this Court. The reasoning of those precedents applies equally to New York's similar disclosure law. Plaintiff's contention that its proposed advertisements do not reference a clearly identified candidate are legally incorrect and ignore the important factual context of the period preceding the 2025 mayoral election.

## ISSUES PRESENTED

1. Whether the Court lacks jurisdiction because plaintiff's appeal from the denial of its motion for a preliminary injunction is moot.

2. In the alternative, if the Court determines the appeal is not moot, whether the district court appropriately exercised its discretion in concluding that plaintiff failed to establish the requirements for obtaining a preliminary injunction.

## STATEMENT OF THE CASE

### A.    Statutory Framework

New York law imposes registration and disclosure requirements on organizations that make certain public communications in the period leading up to New York elections. The communications subject to these disclosure requirements are referred to as "independent expenditure[s]" because they are made without coordinating with a candidate or party. *See* Election Law § 14-107.

For a communication to be an independent expenditure, it must, at a minimum, refer to a "clearly identified candidate."[1] *Id.* § 14-107(1). A candidate is an individual "who seeks nomination for election, or election, to any public office." *Id.* § 14-100(7). And a communication refers to a clearly identified candidate when "(a) the name of the candidate involved appears; (b) a photograph or drawing of the candidate appears; or (c) the identity of the candidate is apparent by unambiguous reference." *Id.* § 14-100(12).

---

[1] To be an independent expenditure, a communication must also be conveyed to a portion of the general public through certain media. *See* Election Law § 14-107(1)(a), (b). Plaintiff does not challenge those requirements.

Whether a communication that references a clearly identified candidate qualifies as an independent expenditure depends on the period in which the communication is made. In the period shortly before an election—within sixty days of a general election or thirty days of a primary election—a communication that "includes or references a clearly identified candidate" is an independent expenditure, even if the communication does not advocate for or against that candidate. *See id.* § 14-107(1)(a)(iii). Outside of that limited period, to qualify as an independent expenditure, a communication made in an election year must both refer to a clearly identified candidate and "advocate[] for or against" that candidate." *Id.* § 14-107(1)(a)(ii). A communication can also be an independent expenditure if, regardless of when it is made, the communication "contains words such as 'vote,' 'oppose,' 'support,' 'elect,' 'defeat,' or 'reject,' which call for the election or defeat" of a clearly identified candidate. *Id.* § 14-107(1)(a)(i).

The New York State Board of Elections has promulgated a regulation that interprets and applies these statutory provisions. The regulation's definitions of "clearly identified candidate" and "independent expenditure" are substantively identical to the statutory definitions. *See* 9 N.Y.C.R.R. § 6200.10(b)(1), (3). The regulation also defines the phrase "Advocates for

6

or Against," which is not defined in the Election Law itself, *see id.* § 6200.10(b)(1)(ii)(c)(1), and provides a list of nonexhaustive factors to consider in determining whether a communication "is advocating for or against a candidate," *see id.* § 6200.10(b)(1)(ii)(c)(2)-(3).

An organization that makes an independent expenditure must register with the Board and disclose to the Board information regarding its employees. Election Law § 14-107(3). The organization must also disclose to the Board information regarding contributions made to the organization and expenditures by the organization above certain monetary thresholds. *Id.* § 14-107(4). All independent expenditures must also include language identifying the source of the expenditure and disclaiming coordination with any candidate. *Id.* § 14-107(2). The Chief Enforcement Counsel of the Board is authorized to investigate violations of these requirements and may seek civil penalties against violators in state court. *Id.* § 3-104(3), (5)(a).

7

## B. Factual Background and Procedural History

On November 4, 2025, New York City held the 2025 mayoral election. The election was won by candidate Zohran Mamdani.[2] During his campaign, Mr. Mamdani publicly identified himself as a "democratic socialist,"[3] and he was the only candidate for mayor who is a member of the DSA,[4] the largest socialist organization in the United States.[5]

---

[2] *See* Rachel Treisman & Brian Mann, *Mamdani Wins New York City Mayoral Race, in a Historic Victory for Progressives*, NPR (Nov. 5, 2025), https://www.npr.org/2025/11/04/nx-s1-5597788/election-results-zohran-mamdani-new-york-city-mayor.

[3] *See, e.g.*, Sarah Fortinsky, *Mamdani on Trump Calling Him a Communist: 'I Am a Democratic Socialist'*, Hill (Sept. 29, 2025), https://thehill.com/homenews/campaign/5528179-democratic-socialist-mamdani-defends-politics/; *see also* Zohran Mamdani, *Inaugural Address* (Jan. 1, 2026), https://www.nyc.gov/mayors-office/news/2026/01/mayor-zohran-mamdani-inaugural-address ("I was elected as a Democratic socialist and I will govern as a Democratic socialist.").

[4] *See, e.g.*, Peter Sterne, *DSA Assembly Member Zohran Mamdani Is Considering a Run for NYC Mayor*, City & State N.Y. (July 16, 2024), https://www.cityandstateny.com/politics/2024/07/dsa-assembly-member-zohran-mamdani-considering-run-nyc-mayor/398089/; Eva McKend & Gloria Pazmino, *Mamdani Faces Pressure in NYC Mayor's Race over Democratic Socialist Ideas*, CNN (Aug. 28, 2025), https://www.cnn.com/2025/08/28/politics/mamdani-democratic-socialists-cuomo; Hadas Thier, *How DSA Built Zohran Mamdani's Electoral Machine*, Nation (Sept. 12, 2025), https://www.thenation.com/article/politics/zohran-mamdani-dsa-field-operations/.

[5] *Democratic Socialists of America* (n.d.), https://www.dsausa.org/.

Mr. Mamdani was also the only candidate for mayor endorsed by the New York City chapter of the DSA.[6] Mr. Mamdani's affiliation with the DSA and identity as a democratic socialist were widely reported on in the months and weeks preceding the election.[7]

Plaintiff American Future Fund is a nonprofit organization "designed to effectively communicate conservative and free market ideals to the American Public." (Appendix (A.) 17.) During the sixty-day period preceding the 2025 mayoral election, plaintiff wanted to run a series of eleven advertisements in New York City attacking the DSA and socialism and encouraging New Yorkers to vote in the upcoming election. (*See* A. 22-23.) Five of the proposed advertisements explicitly referenced the DSA and urged New Yorkers to vote. (A. 22-23.) For example, one of the advertisements stated that the DSA "seeks to control the future of NYC" and that

---

[6] *See* N.Y.C. Democratic Socialists of Am., *Zohran Mamdani for New York City Mayor* (n.d.), https://socialists.nyc/zohran-mayor-nyc-dsa/

[7] *See, e.g.*, Sterne, *supra*; Fortinsky, *supra*; Thier, *supra*.

9

the "only way to stop them is to vote."[8] (A. 22; *see also* A. 22-23 (full text of advertisements).) Another stated that that the DSA would "remake our

_____

[8] The full text of the five proposed advertisements that referenced the DSA is as follows:

1. The Democratic Socialists of America, an extremist political organization, seeks to control the future of NYC. They want to defund and ultimately eliminate the police and prisons, decriminalize all drugs, no matter how dangerous, and radically change our economic system. The only way to stop them is to vote.

2. They call themselves the DSA — but behind the name is an agenda that would remake our city. Defunding the police. Legalizing sex work. Reshaping our economy with reckless policies. This isn't the future New Yorkers want. The only way to stop extremists is to vote.

3. They pretend it would be progress. But what socialism really means is higher taxes — on families, on small businesses, on the people who make New York run. The DSA's plan would drain paychecks, crush jobs, and drive even more families out of the city. New Yorkers already pay more than enough. We can't afford their so-called revolution. Protect your paycheck. Protect your future. Stand up for New York — vote.

4. They say it's empowerment. But the truth is darker. The DSA wants to legalize prostitution — opening the door to human trafficking, exploitation, and crime in our neighborhoods. Is this the future we want for our daughters, our streets, our city? New York should protect the vulnerable, not put them at greater risk. Don't let this reckless idea become law. Stand up for New York. Vote.

5. The DSA isn't just another group. They're pushing an extremist vision: higher taxes, defunded police, legalized prostitution, reckless policies that put ideology before people. New Yorkers didn't ask for this — and we don't have to accept it. The future of our city is on the line. Stop the extremists. Protect New York. Vote.

city" and that the "only way to stop extremists is to vote." (A. 23.) Six of the proposed advertisements did not reference the DSA. (*See* A. 22-23.)

In October 2025, plaintiff filed this pre-enforcement action seeking a declaratory judgment that the disclosure requirements are unconstitutional both facially and as applied to its proposed advertisements. (A. 16-17.) Plaintiff brought the action against the New York State Board of Elections, Michael L. Johnson in his capacity as the Chief Enforcement Counsel for the Board, Kathleen C. Hochul in her capacity as Governor of the State of New York, and Letitia A. James in her capacity as Attorney General of the State of New York (the State Defendants).[9] Plaintiff asserted that it filed the action so it could "plan and implement its constitutionally protected political speech for the next month." (A. 22.) Plaintiff alleged that the disclosure rules were unconstitutionally vague and failed to satisfy

---

[9] Plaintiff also sued the New York City Campaign Finance Board but voluntarily dismissed the claims against it while the motion for preliminary injunction was pending. (*See* So-Ordered Mem. (Oct. 17, 2025), ECF No. 24.) The State Defendants sought the dismissal of the Governor and the Attorney General under *Ex parte Young* in their opposition to the preliminary injunction motion, but the district court declined to address the issue as unnecessary at that stage. (*See* A. 87 n.2.)

exacting scrutiny under the First Amendment. (A. 26-34.) Plaintiff did not raise a statutory claim under the Election Law.

Plaintiff also filed a motion for a preliminary injunction. The motion sought an order enjoining the State Defendants from enforcing the Election Law's disclosure requirements against plaintiff for running the proposed advertisements before the 2025 election. The motion was limited to only plaintiff's as-applied claims. (*See* A. 43-44 (explaining that the motion was a "narrow request for a preliminary injunction, related to 11 particular ads").) Plaintiff sought expedited briefing on the motion because "the speech at issue [was] time-sensitive." (Letter from Pl. to Hon. J. Rearden (Oct. 4, 2023) at 2, ECF No. 10.)

While the motion was pending, plaintiff and the State Defendants agreed to narrow the dispute. Specifically, the State Defendants agreed that the six proposed advertisements that did not reference the DSA would not constitute independent expenditures if aired in the sixty days before the 2025 mayoral election. (*See* So-Ordered Letter at 1 (Oct. 24, 2025),

12

ECF No. 32.) Plaintiff therefore withdrew the preliminary injunction motion as to those six proposed advertisements.[10] (*Id.* at 2.)

On October 28, 2025, the district court denied plaintiff's motion as to the remaining five advertisements. The court first held that plaintiff had not established a likelihood of success on its claims that the disclosure requirements were unconstitutional as applied to those advertisements.

On plaintiff's vagueness claim, the court held that the statute was not vague as applied to the advertisements because the statute's definition of "clearly identified candidate" gave plaintiff fair notice of its scope. (A. 97-100 (quotation marks omitted).) As the court explained, the state law definition of "clearly identified candidate" mirrors the federal law definition of the same term, which the Supreme Court has found is not vague. (*See* A. 97-98 (quotation marks omitted) (citing *Buckley v. Valeo*, 424 U.S. 1, 43-44 & n.51 (1976)).) The court rejected plaintiff's argument that the implementing regulation's definition of the phrase "advocates for or against" was vague. The court found that the meaning of "advocates for

---

[10] As part of the agreement, plaintiff agreed to submit copies of the six advertisements "as aired, to the Court and State Defendants' counsel." (So-Ordered Letter at 1.) Plaintiff has not submitted copies of any aired advertisements to the district court or to the State Defendants.

or against" was irrelevant to plaintiffs' as-applied challenge because that condition is applicable only to communications made outside the sixty-day period before a general election. (A. 99-100 (quotation marks omitted).) Because plaintiff planned to run its advertisements within sixty days of the mayoral election, the disclosure requirements would apply to the advertisements if they referenced a "clearly identified candidate," regardless of whether they "advocate[] for or against" that candidate. (A. 100-101 (quotation marks omitted).)

The district court also held that application of the disclosure requirements to the proposed advertisements satisfied the exacting scrutiny standard applicable under the First Amendment. The court explained that the disclosure requirements were sufficiently limited in scope because they, like other disclosure requirements upheld by the Supreme Court and this Court, apply only to communications that reference a clearly identified candidate. (A. 102-103.) For the same reason, the disclosure requirements advanced the State's interest in providing the electorate with information on election-related speech and spending. (A. 103-104.)

Because the district court concluded that plaintiff was unlikely to succeed on the merits of its constitutional challenges, the district court

14

also concluded that plaintiff failed to show irreparable harm or that the public interest warranted a preliminary injunction. (A. 105-108.)

The next day, on October 29, 2025, plaintiff timely filed an appeal from the district court's denial of its motion. The 2025 mayoral election was conducted on November 4, 2025. Mr. Mamdani won the election, and he took office on January 1, 2026. Plaintiff did not seek emergency relief from this Court before the 2025 mayoral election.[11]

## STANDARD OF REVIEW

A preliminary injunction is an "extraordinary and drastic remedy" that should not be granted unless the movant, "by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (quotation marks omitted). A party seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) irreparable harm in the absence of an injunction, (3) that the injunction is in the

---

[11] In the district court, the State Defendants have moved to dismiss plaintiff's complaint for failure to state a claim. (ECF No. 44.) Briefing on the motion is stayed pending the Court's decision in this appeal. (ECF No. 47.)

public interest, and (4) that the balance of equities supports an injunction. *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 273-74 (2d Cir. 2021).

This Court reviews the denial of a preliminary injunction motion for abuse of discretion. *St. Joseph's Hosp. Health Ctr. v. American Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025). A district court does not abuse its discretion unless "it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Id.* (quotation marks omitted).

## SUMMARY OF ARGUMENT

Because the 2025 mayoral election has passed, the Court should dismiss this appeal as moot. In the alternative, if the Court determines that the appeal is not moot, the Court should affirm the district court's dismissal of plaintiff's motion for a preliminary injunction.

I. This appeal is moot because the Court can no longer grant plaintiff effectual relief. This appeal concerns solely plaintiff's request for a preliminary injunction—which was based solely on its as-applied claims. Plaintiff sought that preliminary injunction specifically to run its proposed advertisements in the sixty-day period before the 2025 mayoral election

16

without needing to comply with the Election Law's disclosure requirements. Because that election has now passed, the Court can no longer provide plaintiff with the sole relief that it sought. And a ruling on this appeal would not provide plaintiff the ability to run the advertisements before a future election without complying with the disclosure requirements because any future election will involve different candidates.

For similar reasons, the issues in this appeal are not capable of repetition or evading review. Although plaintiff contends, for the first time on appeal, that it plans to run its proposed advertisements in 2026, any ruling about the constitutionality of the disclosure rules as applied to those advertisements in the context of a 2026 election would be purely advisory. Whether the disclosure rules can be applied to the proposed advertisements before any 2026 elections will depend on the specific context of those elections, including the identities of the candidates—which are not fully known. And the dispute will not evade review in any event. Plaintiff's facial challenges are still pending before the district court, and plaintiff's arguments about vagueness and the First Amendment can be litigated there. Moreover, plaintiff has ample time to bring a new as-applied challenge before any future elections, if it wants to do so.

17

II. In the alternative, if the Court determines that the appeal is not moot, the Court should affirm. The district court correctly determined that plaintiff failed to satisfy the requirements for a preliminary injunction.

A. Plaintiff failed to establish a likelihood of success on its vagueness challenge to the phrase "clearly identified candidate" in the Election Law because the phrase gives fair notice of its scope. Indeed, both the Supreme Court and this Court have rejected vagueness challenges to the use of the identical phrase in state and federal election-disclosure laws. Plaintiff's contention that the Election Law's definition of an entirely different phrase—"advocates for or against"—renders the phrase "clearly identified candidate" vague fundamentally misreads the statute and ignores the factual context of its own claims. As the district court correctly concluded, the definition of "advocates for or against" has no relevance to the as-applied claims on which plaintiff based its preliminary injunction motion because the disclosure rules would have applied to plaintiff's proposed advertisements regardless of whether they advocated for or against a candidate. In any event, as applied to the proposed advertisements, the definition of "advocates for or against" is not vague.

18

Plaintiff also failed to establish a likelihood of success on its claim that application of the Election Law's disclosure requirements to the proposed advertisements would violate the First Amendment. As plaintiff concedes, the Supreme Court and this Court have concluded that the First Amendment permits the application of disclosure requirements to communications that reference clearly identified candidates within sixty days of an election. Plaintiff does not argue that the Election Law differs in any meaningful way from the analogous disclosure schemes the Supreme Court and this Court have upheld.

Plaintiff's contention that the proposed advertisements do not reference a clearly identified candidate is a statutory argument, not a constitutional one, and plaintiff did not raise any claim in the complaint that the State Defendants have misapplied the statute. In any event, in the context of the 2025 mayoral election, the proposed advertisements were an unambiguous reference to Mr. Mamdani, who was the only mayoral candidate who was a member of the DSA and who publicly identified as a democratic socialist.

Because plaintiff failed to establish a likelihood of success on the merits, the district court correctly concluded that plaintiff failed to estab-

19

lish irreparable harm or that the public interest warranted a stay. Plaintiff also cannot establish irreparable harm because the 2025 mayoral election has passed, and plaintiff therefore does not face any imminent injury.

## ARGUMENT

### POINT I

**THE COURT SHOULD DISMISS PLAINTIFF'S APPEAL AS MOOT**

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). This Court lacks jurisdiction over an appeal when the issues presented in the appeal "are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted); *see Independence Party of Richmond Cnty. v. Graham*, 413 F.3d 252, 256 (2d Cir. 2005).

Plaintiff's appeal is moot because it concerns only plaintiff's request for preliminary relief to allow it to run its advertisements in the period immediately preceding the 2025 mayoral election—which has now passed. Plaintiff's preliminary injunction motion was based solely on its as-applied claims—which specifically sought to run the proposed advertisements before the 2025 election. (*See* A. 44, 78 (explaining that the motion was

20

limited to plaintiff's as-applied claims).) The complaint, filed in early October 2025, asserted that plaintiff planned to run the advertisements "in the coming weeks" (A. 11) and that plaintiff needed a ruling to be "able to plan and implement its constitutionally protected political speech for the next month" (A. 22). For that reason, plaintiff's complaint sought a decision before the 2025 election, asking the court for an "immediate ruling" on its motion. (A. 25.)

The preliminary injunction motion itself shows that plaintiff sought preliminary relief solely so that it could run the proposed advertisements in the sixty-day period preceding the 2025 election. Like the complaint, the motion explained that plaintiff sought an injunction to run the advertisements "in the coming weeks" so that it could "urge all New Yorkers . . . to exercise their right to vote." (Mem. of Law in Support of Pl.'s Mot. for Prelim. Inj. at 4 (Oct. 3, 2025), ECF No. 9.) Due to the "time-sensitive" nature of the advertisements, plaintiff sought expedited briefing on its motion (Letter from Pl. to Hon. J. Rearden at 2), which the district court granted. (Scheduling Order at 2 (Oct. 6, 2025), ECF No. 12.) And when the district court had not yet issued a ruling a week before the date of the election, plaintiff's counsel reiterated its request to the district court

21

because plaintiff was "getting to the point where it faces a constructive denial of the motion." Email from Counsel for Pl. to the Court at 1 (Oct. 28, 2025) (see Addendum).

The text of the proposed advertisements further confirms that the purpose of plaintiff's as-applied claims, and its preliminary injunction motion based on those claims, was solely to obtain relief for the 2025 election. All but one of the proposed advertisements urged New Yorkers to vote, and one proposed advertisement specifically urged New Yorkers to "vote at your earliest opportunity, in-person beginning on October 25."[12] (*See* A. 22-23.) Moreover, the stated basis for plaintiff's as-applied claim was the State Defendants' position that the proposed advertisements made an unambiguous reference to a specific candidate in the 2025 mayoral election, Mr. Mamdani. (*See* A. 30.)

Because plaintiff's motion sought preliminary injunctive relief to allow plaintiff to run advertisements before an election that has passed, the Court cannot grant plaintiff any effectual relief. Plainly, it is impos-

---

[12] This advertisement does not reference the DSA and so the parties agreed that it would not have been an independent expenditure subject to the disclosure rules had it run in the sixty-day period before the 2025 mayoral election. (*See* So-Ordered Letter at 1.)

22

sible for the Court to now grant plaintiff a preliminary injunction to run advertisements before the 2025 mayoral election—the only relief plaintiff sought in its motion. *See Graham*, 413 F.3d at 256. For the first time on appeal, plaintiff asserts that it now plans to run the proposed advertisements (or materially similar ones) in 2026. *See* Br. at 56-58. But plaintiff did not raise that claim in the district court, and a ruling from this Court about whether the disclosure rules can constitutionally be applied to the proposed advertisements in 2026 would, at this stage, be purely advisory. *See ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004) (court must dismiss moot appeal rather than issue an advisory opinion). Determining whether the disclosure rules can be applied to the proposed advertisements in 2026 (or before another future election) is a context-specific inquiry that would present issues different from those raised in plaintiff's preliminary injunction motion.

Contrary to plaintiff's arguments (Br. at 56-57), this appeal does not satisfy the exception to mootness for disputes that are capable of repetition, yet evading review. That exception is satisfied only when the plaintiff demonstrates both that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there

is a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Doe v. McDonald*, 128 F.4th 379, 386-87 (2d Cir. 2025) (quotation marks omitted); *see Van Wie v. Pataki*, 267 F.3d 109, 113-14 (2d Cir. 2001). To satisfy the second element, a plaintiff must show that "it is 'probable' that [it] will need to seek the same relief from the defendant's same conduct again in the future." *Town of Newburgh v. Newburgh EOM LLC*, 151 F.4th 96, 102 (2d Cir. 2025) (quoting *Doe*, 128 F.4th at 386-87). "[M]ere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation." *Dennin v. Connecticut Interscholastic Athletic Conf., Inc.*, 94 F.3d 96, 101 (2d Cir. 1996) (quotation marks omitted).

Plaintiff has failed to satisfy either element. First, plaintiff has not shown a reasonable expectation that the State Defendants will enforce the disclosure requirements against plaintiff if it runs the proposed advertisements (or materially similar ones) in 2026. Determining whether communications refer to a clearly identified candidate in an election is a context-dependent analysis that depends on who the candidates for office are in that election. The State Defendants' position in this litigation is that the advertisements would have been independent expenditures if

24

run in the sixty days before the 2025 mayoral election because the advertisements were a clear reference to Mr. Mamdani, a candidate in that election. See *infra* at 42-45. But the same circumstances are not likely to occur again. Mr. Mamdani won the 2025 mayoral election and will not be a candidate for any election in 2026. And the identities of all of the candidates for any 2026 elections are not yet known. Any as-applied challenge to the applicability of the disclosure requirements to the proposed advertisements in 2026 would therefore be a different claim relating to a different election with different candidates. The materially different circumstances surrounding a 2026 election mean that the dispute presented here is not likely to recur. *See Meadors v. Erie Cnty. Bd. of Elections*, No. 23-cv-1054, 2024 WL 3548729, at \*2 (2d Cir. July 26, 2024) (summary order), *cert. denied*, 145 S. Ct. 2752 (2025); *cf. Noem v. Haaland*, 41 F.4th 1013, 1016-17 (8th Cir. 2022) (exception to mootness did not apply where "the circumstances [were] likely to be different each time" the plaintiff sought a permit).

Second, and in any event, plaintiff failed to establish that the dispute between the parties will evade review. As an initial matter, plaintiff's facial challenges to the disclosure requirements are still pending in the district

25

court. Those challenges raise largely the same issues as the as-applied challenges, and plaintiff has not argued that those issues cannot be fully litigated below.[13] *See Graham*, 413 F.3d at 257 (mootness exception did not apply where underlying issues raised on appeal also were pending in the district court). And if plaintiff wants to raise a new as-applied challenge to the enforcement of the disclosure requirements to the proposed advertisements for a different election in 2026, it has ample time to do so and fully litigate such a challenge. *See Freedom Party of N.Y. v. New York State Bd. of Elections*, 77 F.3d 660, 663 (2d Cir. 1996) ("If the same issue should arise between Appellants and Appellees prior to the next election, now several months away, there is no reason why the issue could not be fully litigated at that time."). Indeed, plaintiff brought this action and sought preliminary injunctive relief from the district court only one month before the 2025 mayoral election, yet declined to seek emergency injunctive relief from this Court before the election passed— thus allowing its appeal to become moot. A new as-applied challenge

---

[13] Although the State Defendants have filed a motion to dismiss the facial challenges for failure to state a claim, the State Defendants do not argue that the facial challenges are moot. (*See* ECF No. 44.)

26

concerning advertisements ahead of a 2026 election would not necessarily evade review if plaintiff, for example, filed its complaint with more time before the 2026 election.

Plaintiff misplaces its reliance (Br. at 56-58) on *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007) ("*WRTL*"), and *National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013). In those cases, unlike here, the district courts dismissed the plaintiff's complaints, and the underlying issues therefore did not remain pending in the district court. In addition, in *WRTL* and *Walsh*, the plaintiffs demonstrated that they planned to run similar advertisements in "materially similar situations in the future," *Walsh*, 714 F.3d at 692 (quotation marks omitted); *see WRTL*, 551 U.S. at 463. Here, as explained above, the circumstances under which plaintiff plans to run the proposed advertisements are not materially similar—there will be new elections in 2026 with new candidates, and any analysis as to whether its advertisements fall within the disclosure requirements will depend on the specific context surrounding those elections. *See Meadors*, 2024 WL 3548729, at \*2.

27

## POINT II

### IN THE ALTERNATIVE, THE DISTRICT COURT CORRECTLY DENIED PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

In the alternative, if the Court determines that the appeal is not moot, the Court should affirm the district court's dismissal of plaintiff's motion for a preliminary injunction. The district court correctly determined that plaintiff is not likely to succeed on the merits of its claims and that plaintiff did not face irreparable harm. Moreover, plaintiff will not experience any imminent harm absent preliminary relief now because the 2025 election for which it sought an injunction has passed. And, as the district court also correctly determined, the public interest weighs heavily against preliminary relief.

28

## A.     Plaintiff Is Not Likely to Succeed on the Merits of Its Claims.

### 1.     The disclosure requirements are not vague under the Due Process Clause.

The district court correctly determined that plaintiff failed to establish a likelihood of success on its claim that the disclosure requirements are unconstitutionally vague as applied to the proposed advertisements. (*See* A. 96-102.) Under the Due Process Clause, a statute is unconstitutionally vague "if it (1) 'fails to provide a person of ordinary intelligence fair notice of what is prohibited,' or (2) 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Brokamp v. James*, 66 F.4th 374, 403 (2d Cir. 2023) (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010)), *cert. denied*, 144 S. Ct. 1095 (2024). Although courts apply a "heightened" vagueness review to statutes that implicate the First Amendment, *id.*, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity," *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010) (quotation marks omitted). Instead, regulations satisfy due process when "a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning

29

of what the regulations require." *Rock of Ages Corp. v. Secretary of Lab.*, 170 F.3d 148, 156 (2d Cir. 1999).

Because plaintiff's preliminary injunction motion was based solely on its as-applied challenges, the Court's analysis is "confined to [plaintiff's] *actual* conduct," and the Court "should not analyze whether a reasonable person would understand that certain hypothetical conduct or situations violate the statute." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 189 (2d Cir. 2010). Here, plaintiff sought a preliminary injunction to run its proposed advertisements within sixty days of the 2025 mayoral election. See *supra* at 20-22. During that period, plaintiff's proposed advertisements would have qualified as independent expenditures under the Election Law if they "include[d] or reference[d] a clearly identified candidate." Election Law § 14-107(1)(a)(iii). Thus, to succeed on its as-applied claim, plaintiff was required to show that the phrase "clearly identified candidate" was unconstitutionally vague as applied to its proposed advertisements.

As the district court correctly held (A. 97-100), there is no merit to plaintiff's contention that "clearly identified candidate" is unconstitutionally vague as applied to its proposed advertisements. The requirement

30

that an election-related communication reference a "clearly identified candidate" to trigger a disclosure obligation "has long been used in federal campaign finance law and has been incorporated into the campaign finance laws of dozens of states," as plaintiff acknowledges. Br. at 12. For example, the identical phrase is used in the definition of "electioneering communication" in the federal Bipartisan Campaign Reform Act of 2002 (BCRA), 52 U.S.C. § 30104(f)(3)(A)(i)(I). And the Supreme Court has held that the definition is "both easily understood and objectively determinable" in upholding that statute's analogous disclosure requirements. *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 194 (2003),[14] o*verruled on other grounds by, Citizens United v. Federal Election Comm'n*, 558 U.S. 310 (2010). Just as under the Election Law, a communication references a clearly identified candidate under the BCRA when "the name of the candidate involved appears"; "a photograph or drawing of the candidate appears"; or "the identity of the candidate is apparent by unambiguous reference." 52 U.S.C. § 30101(18); *see* Election Law § 14-100(12).

---

[14] When *McConnell* was decided, the relevant provision was located at 2 U.S.C. § 434. *See McConnell*, 540 U.S. at 194.

This Court and others have also rejected vagueness challenges to other state laws that use the phrase "clearly identified candidate." *See, e.g., Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 128-29 (2d Cir. 2014) (rejecting vagueness challenge to state disclosure statute that applied to communications that "promote[], support[], attack[], or oppose[]" a "clearly identified candidate" (quotation marks omitted)); *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 491-92 (7th Cir. 2012) (rejecting vagueness challenge to state disclosure statute modeled on federal law). Likewise, the phrase "clearly identified candidate" in New York's disclosure law is not unconstitutionally vague.

Plaintiff's contrary arguments are meritless. Plaintiff acknowledges that the Supreme Court and this Court have rejected vagueness challenges to analogous disclosure laws, but it incorrectly contends that the Election Law's use of the phrase "clearly identified candidate" is vague because it can be satisfied when "'the identity of the candidate [is] apparent by unambiguous reference.'" Br. at 25 (quoting Election Law § 14-100(12)). But, as explained, the same is true under federal law, which contains the identical definition. *See* 52 U.S.C. § 30101(18)(C) ("The term 'clearly

32

identified' means that . . . the identity of the candidate is apparent by unambiguous reference").

Plaintiff faults the Election Law for not specifying the examples of an "unambiguous reference" provided by the Supreme Court in *Buckley v. Valeo*,[15] but the Court did not suggest that unambiguous references are limited to only those examples or that those examples must be expressly listed in a disclosure regulation to satisfy due process. *See* 424 U.S. 1, 43 n.51 (1976) (stating that the term unambiguous reference "would include" a list of examples). Thus, courts have rejected the argument that a state disclosure law is vague unless those examples are expressly specified. *See, e.g.*, *Center for Individual Freedom v. Madigan*, No. 10-cv-4383, 2011 WL 13193291, at *6 (N.D. Ill. Nov. 3, 2011) ("Even without an express definition, 'clearly identified' in this context is a sufficiently narrowing term to avoid vagueness that might otherwise

---

[15] In *Buckley*, the Court stated that an "unambiguous reference would include use of the candidate's initials (e.g., FDR), the candidate's nickname (e.g., Ike), his office (e.g., the President or the Governor of Iowa), or his status as a candidate (e.g., the Democratic Presidential nominee, the senatorial candidate of the Republican Party of Georgia)." 424 U.S. 1, 43 n.51 (1976).

exist."), *aff'd*, 697 F.3d 464 (7th Cir. 2012). This Court should reject plaintiff's identical argument here.

Plaintiff also errs in relying on a state regulation that defines when a communication "advocat[es] for or against" a candidate to argue that the term "clearly identified candidate" is vague. *See* Br. at 25-27 (quotation marks omitted). As the district court correctly recognized (A. 99-102), the regulation's definition of "advocates for or against" is irrelevant here. Under its plain language, the regulation defines only the phrase "advocat[es] for or against." *See* 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(2) ("For purposes of determining that a communication is advocating for or against a candidate or ballot proposal, the following factors shall be considered . . ."). It has no bearing on the meaning of the phrase "clearly identified candidate," which is defined separately in the regulation. *See id.* § 6200.10(b)(3); *see also* Election Law § 14-100(12).

Moreover, the phrase "advocates for or against" is irrelevant to plaintiff's as-applied claims, and to its preliminary injunction motion based on those claims, because plaintiff sought to run its advertisements in the sixty-day period preceding a general election. During that period, advertisements qualify as independent expenditures so long as they reference a

34

clearly identified candidate—regardless of whether they advocate for or against that candidate. *See* Election Law § 14-107(1)(a)(iii). By contrast, it is necessary to consider whether a communication advocates for or against a candidate only if the communication is being made *outside* the sixty-day period preceding a general election. *See id.* § 14-107(1)(a)(ii). In other words, as the district court correctly explained, in the sixty days before a general election, the "inquiry stops" at the question of whether a communication references a clearly identified candidate and the "[t]he question of whether the advertisement 'advocates for or against' a clearly identified candidate would not be reached."[16] (A. 100-101.) For that reason, plaintiff's arguments related to the definition of "advocates for or against" are simply irrelevant to its as-applied vagueness claim and its preliminary injunction motion.[17] *See Vermont Right to Life Comm.*, 758 F.3d at 131

---

[16] Plaintiff errs in arguing that subsection (ii) has independent force in the sixty days preceding a general election because the statute uses the disjunctive "or." *See* Br. at 29. Regardless of the use of the word "or," a communication can only satisfy subsection (ii) if it already satisfies subsection (iii). And if it satisfies subsection (iii), it is an independent expenditure without needing to separately satisfy subsection (ii). (*See* A. 99-100.)

[17] Contrary to plaintiff's contention, the State Defendants did not disclaim this argument in the district court. The State Defendants raised the argument in their opposition to plaintiff's motion for a preliminary

(*continued on the next page*)

35

(rejecting vagueness challenge to statutory definition that did not apply to the plaintiff's conduct).

In any event, even if the Court accepts plaintiff's incorrect premise that the definition of "advocates for or against" is relevant here, that definition does not render the disclosure requirement vague as applied to plaintiff's proposed advertisements. Under the applicable regulation, a communication "[a]dvocates for or [a]gainst" if it "promotes, supports, attacks, or opposes the Clearly Identified Candidate." 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(1). The Supreme Court and this Court have held that those terms are sufficiently clear to satisfy due process. *See McConnell*, 540 U.S at 170 n.64; *Vermont Right to Life Comm.,* 758 F.3d at 128-29. As the Supreme Court explained in interpreting an analogous federal disclosure provision, the "words 'promote,' 'oppose,' 'attack,' and 'support' clearly set forth the confines within which potential party speakers must act in order to avoid triggering the provision." *McConnell*, 540 U.S at 170 n.64.

---

injunction and during the hearings before the district court. (*See* Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj. at 9 (Oct. 13, 2025), ECF No. 17; A. 76.)

The regulation's list of factors that should be considered in determining whether a communication advocates for or against a candidate are also not vague as applied to plaintiff's proposed advertisements. *See* 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(2). As an initial matter, the factors are not vague as applied to plaintiff's proposed advertisements because each advertisement expressly urges New Yorkers to "vote" to stop the DSA. (*See* A. 22-23.) Regardless of the factors, that is an "explicit word[] of advocacy" that necessarily means that the advertisements are "[a]dvocat[ing] for or [a]gainst" their subject. 9 N.Y.C.R.R. § 6200.10(b)(1)(ii)(c)(3); *see Buckley*, 424 U.S. at 44 & n.52 (stating that "vote against" is an "express word[] of advocacy"). Plaintiff's arguments about the meaning of the factors concern hypothetical situations that bear no relation to its actual advertisements and are therefore not properly presented by its as-applied challenge. *See VIP of Berlin*, 593 F.3d at 189.

In any event, plaintiff's arguments fail on their own terms. Plaintiff contends that the factors are vague because they could be used to apply the disclosure rules to issue advocacy that does not reference a clearly identified candidate. *See* Br. at 24-27. But plaintiff ignores that a communication can only qualify as an independent expenditure under subsection (ii) of the

37

statute if the communication "*refers to* and advocates for or against *a clearly identified candidate.*" Election Law § 14-107(1)(a)(ii) (emphasis added). Thus, when a communication is made outside of the sixty-day period before a general election—which was not the case here—it can qualify as an independent expenditure under subsection (ii) only when it *both* refers to a clearly identified candidate and advocates for or against that candidate. Accordingly, contrary to plaintiff's argument, the plain text of the statute demonstrates that the State Defendants could not rely on the regulatory factors to determine that a communication that lacks a reference to a clearly identified candidate is an independent expenditure. *See Vermont Right to Life Comm.*, 758 F.3d at 128-29 (rejecting similar vagueness challenge because the applicable disclosure laws required "a reference to a clearly identified candidate").

> 2.  **Application of the disclosure requirements to plaintiff's proposed advertisements complies with the First Amendment.**

Because election disclosure-requirements "impose no ceiling on campaign-related activities . . . and do not prevent anyone from speaking," they are subject to "exacting scrutiny," not strict scrutiny. *See Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 366 (2010) (quotation

38

marks omitted). Exacting scrutiny is "a lower degree of scrutiny," *Citizens United v. Schneiderman*, 882 F.3d 374, 382 (2d Cir. 2018), that "requires a substantial relation between the disclosure requirement and a sufficiently important governmental interest," *Citizens United*, 558 U.S. at 366-67 (quotation marks omitted).

Application of the Election Law's disclosure requirements to the proposed advertisements amply satisfies exacting scrutiny, as the district court correctly concluded (A. 102-105). Under exacting scrutiny, both the Supreme Court and this Court have upheld disclosure requirements that apply to communications referencing a clearly identified candidate close in time to an election. *See Citizens United*, 558 U.S. at 321; *Vermont Right to Life Comm.*, 758 F.3d at 133. Disclosure requirements for these communications are substantially related to and justified by the strong interest of the public "in knowing who is speaking about a candidate shortly before an election." *Citizens United*, 558 U.S. at 369; *accord Vermont Right to Life Comm.*, 758 F.3d at 133. Other courts of appeal have reached the same conclusion. *See, e.g., Independence Inst. v. Williams*, 812 F.3d 787, 796 (10th Cir. 2016) ("[A]dvertisements that mention a candidate shortly

39

before an election *are* deemed sufficiently campaign-related to implicate the government's interests in disclosure.").

The same reasoning applies here. Like the disclosure requirements upheld in those decisions, the Election Law provision at issue applies only to communications that reference a clearly identified candidate close in time to an election. *See* Election Law § 14-107(1)(a)(iii). Plaintiff does not argue otherwise. Indeed, plaintiff concedes that disclosure requirements that apply to communications referencing a clearly identified candidate close in time to an election satisfy exacting scrutiny. *See* Br. at 35. Plaintiff argues instead that disclosure requirements fail exacting scrutiny if they extend to "issue ads that do *not* reference a clearly identified candidate." *See id.* at 36-39 (emphasis added) (quotation marks omitted). Even assuming that this argument is correct,[18] it has no relevance here. By its plain

---

[18] In *Vermont Right to Life Committee*, this Court questioned whether its prior decision holding that "'pure issue advocacy' cannot be the subject of a valid governmental regulation remains viable" after *Citizens United*. 758 F.3d at 131 n.11 (quoting *Minnesota Citizens Concerned for Life, Inc. v. Kelley*, 427 F.3d 1106, 1111 (8th Cir. 2005)). But the Court declined to decide that issue as unnecessary to its decision because the statute it was evaluating required the communication to reference a clearly identified candidate. *See id.* For the same reason, the Court does not need to decide that issue here.

terms, the Election Law's disclosure requirements apply only to communications that reference a clearly identified candidate. See *supra* at 5-6, 37-38. There is therefore no basis for plaintiff's argument that the Election Law's disclosure requirements could be read to apply to pure issue advocacy untethered to a clearly identified candidate. *See Vermont Right to Life Comm.*, 758 F.3d at 131 n.11.

Plaintiff also erroneously contends that application of the Election Law's disclosure requirements to the proposed advertisements would violate the First Amendment because, in plaintiff's view, the advertisements do not reference a clearly identified candidate. *See* Br. at 39-41. As courts have recognized in similar cases, whether an advertisement clearly identifies a candidate is purely a statutory question, not a constitutional one. *See, e.g.*, *Hispanic Leadership Fund, Inc. v. Fed. Election Comm'n*, 897 F. Supp. 2d 407, 431 (E.D. Va. 2012). If an advertisement does not reference a clearly identified candidate, then the Election Law does not apply to it, and the Court would not reach the constitutional question. *See id.*

Here, plaintiff's complaint did not bring any statutory claim that the State Defendants misapplied the Election Law to the proposed advertisements. (*See* A. 26-34.) The district court therefore properly declined to

41

address whether the proposed advertisements referenced a clearly identified candidate (*contra* Br. at 45-51), and no such claim or argument is properly presented on appeal. If the Court concludes that it is necessary to address plaintiff's statutory claim that the proposed advertisements did not refer to a clearly identified candidate, it should remand to the district court to do so in the first instance.

In any event, contrary to plaintiff's argument, the proposed advertisements did reference a clearly identified candidate in the 2025 mayoral election, Mr. Mamdani. Under the Election Law, a communication references a clearly identified candidate when "the identity of the candidate is apparent by unambiguous reference." Election Law § 14-100(12); *see also* 9 N.Y.C.R.R. § 6200.10(b)(3)(iii). In analyzing identical language in federal law, courts have held that the identity of the candidate is apparent by unambiguous reference when the identity is "clear to a reasonable, objective person viewing the advertisement in the context of the reference." *Hispanic Leadership Fund, Inc.*, 897 F. Supp. 2d at 427. The analysis is not "restricted to the four corners of a communication," and the Court can consider the context in which the communication is (or was

42

proposed to be) made. *Federal Election Comm'n v. California Democratic Party*, No. 2:03-cv-547, 2004 WL 865833, at *6 (E.D. Cal. Feb. 13, 2004).

Here, when properly considered in the context of the 2025 mayoral election, it would have been clear to a reasonable observer that the proposed advertisements were a reference to Mr. Mamdani. Plaintiff intended to run the proposed advertisements starting a month before the 2025 mayoral election. See *supra* at 20-22. During his campaign, Mr. Mamdani publicly identified himself as a "democratic socialist,"[19] and it was widely reported in the run-up to the election that Mr. Mamdani was the only candidate for mayor who was a member of the DSA.[20] Mr. Mamdani was also the only candidate for mayor endorsed by the New York City chapter of the DSA.[21] Thus, when the proposed advertisements reference the DSA and assert, for example, that the DSA is an "extremist political organization" that "seeks to control the future of NYC" and that the "only way to stop them is to vote" at the upcoming election (A. 22), the only reasonable conclusion is that the advertisements were referring to Mr. Mamdani's

---

[19] <u>Fortinsky,</u> *supra.*

[20] *See, e.g.*, Sterne, *supra*; Thier, *supra.*

[21] *See* N.Y.C. Democratic Socialists of Am., *supra.*

43

candidacy for mayor. *See California Democratic Party*, 2004 WL 865833, at *6. Mr. Mamdani was the only candidate who reasonably could be considered as the candidate through which the DSA would "control the future of NYC" and who voting could "stop."[22] That is all that is required for an unambiguous reference. *See id.*

Plaintiff misses the mark in contending that the advertisements cannot be an unambiguous reference to Mr. Mamdani because the DSA is not a political party. *See* Br. at 40-41. Plaintiff does not cite anything to support its view that candidates can only be clearly identified by their membership in a political party, rather than by their membership in an organization. Although *Buckley* listed a communication referencing "the senatorial candidate of the Republican Party of Georgia" as an example of an unambiguous reference, 424 U.S. at 43 n.51, it did not indicate that this example (or others it listed) were exhaustive. See *supra* at 33.

---

[22] Plaintiff states that the New York City chapter of the DSA endorsed two other candidates that ran for different offices in the 2025 general election. *See* Br. at 7, 40. The website plaintiff cites is no longer accessible (https://socialists.nyc/endorsements [https://perma.cc/PE3M-J937] (last visited Feb. 6, 2026)). But there is no dispute that these two other candidates did not run for mayor or any other citywide office.

44

Although an advertisement's reference to an organization will not always be an unambiguous reference to one of the organization's members, the proposed advertisements must be read in the context of the election that they would have preceded. *See California Democratic Party*, 2004 WL 865833, at *6. As explained, that context included public reporting that Mr. Mamdani was the only candidate for mayor who was a member of the DSA, that he was the only candidate for mayor endorsed by the New York City Chapter of the DSA, and that he publicly identified himself as a democratic socialist. See *supra* at 43. In this context, it would have been "clear to a reasonable, objective person viewing the advertisement[s] in the context of the reference," *Hispanic Leadership Fund, Inc.*, 897 F. Supp. 2d at 427, that the advertisements' references to the DSA and admonishments that voters should vote to stop the DSA from taking over New York City were a reference to Mr. Mamdani.

## B. Plaintiff Has Not Demonstrated Irreparable Harm or that the Public Interest Favors a Preliminary Injunction.

Plaintiff has also failed to establish the remaining preliminary injunction factors. In a First Amendment challenge, "[t]he presence of irreparable injury to First Amendment rights . . . turns on whether the

45

plaintiff has shown a clear likelihood of success on the merits." *SAM Party of N.Y.*, 987 F.3d at 278 (quotation marks omitted). Because plaintiff failed to establish a likelihood of success on the merits of its claims, the district court correctly concluded that plaintiff also failed to establish irreparable harm.[23] *See Walden v. Kosinski*, 153 F.4th 118, 141 (2d Cir. 2025).

Moreover, even if plaintiff faced imminent, irreparable harm absent preliminary injunctive relief when it filed its motion, it no longer faces any such imminent harm because the 2025 election has passed. As explained, plaintiff sought a preliminary injunction so that it could run the proposed advertisements in the sixty-day period preceding the 2025 election and argued that it faced imminent harm absent relief due to "the time-sensitive nature of the speech." (Mem. of Law in Support of Pl.'s Mot. for Prelim. Inj. at 26.) Now that the 2025 election has passed, plaintiff does not face any imminent harm absent preliminary relief. To the contrary,

---

[23] Although a plaintiff challenging disclosure requirements may also show irreparable harm by demonstrating that its members would face threats or harassment if their names were disclosed, *see Citizens United*, 558 U.S. at 367, plaintiff did not offer any evidence that its members would face any retaliation from disclosure (*see* A. 106-107) and does not make that argument on appeal.

46

plaintiff has ample time to seek relief before the next election, if it wants to do so. See *supra* at 25-27.

The district court also correctly determined that the public interest and balance of equities weigh against a preliminary injunction. (*See* A. 107-108.) "In a suit against the government, balancing of the equities merges into [the court's] consideration of the public interest." *SAM Party of N.Y.*, 987 F.3d at 278. New York's disclosure requirements serve the important public interest of providing greater transparency and information on election-related spending to voters, a benefit long recognized by the Supreme Court as justifying disclosure requirements. See *supra* at 39. Enjoining the operation of those requirements here would have prevented voters from receiving that important informational benefit, harming both the State and the public. (*See* A. 108.) By contrast, the disclosure requirements, which "impose no ceiling on campaign-related activities . . . and do not prevent anyone from speaking," *Citizens United*, 558 U.S. at 367 (quotation marks omitted), do not place a substantial burden on plaintiff's speech or the public's ability to hear that speech. *See Schneiderman*, 882 F.3d at 382 (describing disclosure requirements as "a less burdensome alternative to more restrictive speech regulations"). Plaintiff's argument that

47

continued enforcement of the disclosure requirements harms the public interest (*see* Br. at 54-55) is a repackaging of its merits arguments and fails for the same reasons.

## CONCLUSION

The Court should dismiss plaintiff's appeal as moot. In the alternative, if the Court determines that the appeal is not moot, the Court should affirm the district court's denial of plaintiff's motion for a preliminary injunction.

Dated:  New York, New York
        February 6, 2026

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellees


By:  */s/ Daniel S. Magy*
     DANIEL S. MAGY
     Assistant Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*
JUDITH N. VALE
  *Deputy Solicitor General*
DANIEL S. MAGY
  *Assistant Solicitor General*
      *of Counsel*

28 Liberty Street
New York, New York 10005
(212) 416-6073

49

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Mary Quinn Moss, an employee in the Office of the New York State Attorney General, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 9,490 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

*/s/ Mary Quinn Moss*

# Addendum

**From:** Kellen Dwyer <kdwyer@HoltzmanVogel.com>
**Sent:** Tuesday, October 28, 2025 11:13 AM
**To:** Rearden NYSD Chambers
**Cc:** Jason Torchinsky; Andrew Episkopos; Baker, Patrick; Arz, Roderick; wscovill@law.nyc.gov
**Subject:** RE: American Future Fund v. New York State Board of Elections et al (25cv8151)

**[EXTERNAL]**

Good morning,
I am writing to respectfully inquire on the status of the Court's decision on the motion for preliminary injunction. While AFF greatly appreciates the Court's attention to this matter, we are getting to the point where it faces a constructive denial of the motion.

Thank you,
Kellen

**Kellen Dwyer**
Partner
**Holtzman Vogel**

M 202.733.5550
O 202.737.8808

**holtzmanvogel.com**

**From:** Rearden NYSD Chambers <ReardenNYSDChambers@nysd.uscourts.gov>
**Sent:** Thursday, October 23, 2025 11:39 AM
**To:** Kellen Dwyer <kdwyer@HoltzmanVogel.com>; Rearden NYSD Chambers
<ReardenNYSDChambers@nysd.uscourts.gov>; Andrew Episkopos <AEpiskopos@HoltzmanVogel.com>;
patrick.baker@ag.ny.gov; Roderick.Arz@ag.ny.gov; wscovill@law.nyc.gov
**Cc:** Sharon Norwood <snorwood@HoltzmanVogel.com>; Jason Torchinsky <jtorchinsky@HoltzmanVogel.com>
**Subject:** Re: American Future Fund v. New York State Board of Elections et al (25cv8151)

Counsel,

The transcript will be docketed automatically within a week.  For any further questions regarding the transcript, please feel free to reach out to Ashley Lucca (alucca@sdreporters.com; 212-805-0331).

Thank you,

**Chambers of the Hon. Jennifer H. Rearden**

United States District Court
Southern District of New York
500 Pearl Street, Room 1010
New York, NY 10007
Email: ReardenNYSDChambers@nysd.uscourts.gov
Office: 212-805-0230

1

**From:** Kellen Dwyer <kdwyer@HoltzmanVogel.com>
**Sent:** Monday, October 20, 2025 3:40 PM
**To:** Rearden NYSD Chambers <ReardenNYSDChambers@nysd.uscourts.gov>; Andrew Episkopos <AEpiskopos@HoltzmanVogel.com>; patrick.baker@ag.ny.gov <patrick.baker@ag.ny.gov>; Roderick.Arz@ag.ny.gov <Roderick.Arz@ag.ny.gov>; wscovill@law.nyc.gov <wscovill@law.nyc.gov>
**Cc:** Sharon Norwood <snorwood@HoltzmanVogel.com>; Jason Torchinsky <jtorchinsky@HoltzmanVogel.com>
**Subject:** RE: American Future Fund v. New York State Board of Elections et al (25cv8151)

==**CAUTION - EXTERNAL:**==

All,

Attached please find a copy of the transcript of Thursday's hearing, which we just received from the court reporter. I believe that the court reporter will add this to the docket, but we would be happy to file it on ECF if that would be helpful.

Thanks,

Kellen

**Kellen Dwyer**
Partner • Washington, DC

M 202.733.5550
O 202.737.8808
Bio • LinkedIn



DC • VA • FL • AZ • NY • TN • UT
**holtzmanvogel.com**

PRIVILEGED AND CONFIDENTIAL
This communication and any accompanying documents are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication is strictly prohibited. Moreover, any such disclosure shall not compromise or waive the attorney-client, accountant-client, or other privileges as to this communication or otherwise. If you have received this communication in error, please contact me at the above email address. Thank you.

DISCLAIMER
Any accounting, business or tax advice contained in this communication, including attachments and enclosures, is not intended as a thorough, in-depth analysis of specific issues, nor a substitute for a formal opinion, nor is it sufficient to avoid tax-related penalties. If desired, Holtzman Vogel Baran Torchinsky & Josefiak PLLC would be pleased to perform the requisite research and provide you with a detailed written analysis. Such an engagement may be the subject of a separate engagement letter that would define the scope and limits of the desired consultation services.

**From:** Rearden NYSD Chambers <ReardenNYSDChambers@nysd.uscourts.gov>
**Sent:** Saturday, October 18, 2025 1:19 PM
**To:** Kellen Dwyer <kdwyer@holtzmanvogel.com>; Andrew Episkopos <aepiskopos@holtzmanvogel.com>;

patrick.baker@ag.ny.gov; Roderick.Arz@ag.ny.gov; wscovill@law.nyc.gov
**Subject:** American Future Fund v. New York State Board of Elections et al (25cv8151)

Counsel,

Please see the Court's Order attached.  This Order will be available on the docket on Monday.

Please let us know if the parties have ordered the transcript, and if so, when you expect it to be available.

Thank you,

**Chambers of the Hon. Jennifer H. Rearden**

United States District Court
Southern District of New York
500 Pearl Street, Room 1010
New York, NY 10007
Email: ReardenNYSDChambers@nysd.uscourts.gov
Office: 212-805-0230

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

3